Robert FLIEGER, Appellant,

v.

**Paul K. DELO, Superintendent, Appellee.**

No. 92–3386.

United States Court of Appeals, Eighth Circuit.

Submitted June 18, 1993.

Decided Feb. 15, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied April 7, 1994.

Counsel who presented argument on behalf of the appellant was Curtis Blood, Collinsville, IL.

Counsel who presented argument on behalf of the appellee was Stephen D. Hawke, Jefferson City, MO.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

BOWMAN, Circuit Judge.

Robert Elmer Flieger was convicted of murdering Patricia Gradley. He appeals the District Court's [1] denial of his petition for a writ of habeas corpus, and we affirm.

## I.

Gradley and her son lived in an apartment immediately below an apartment in which Flieger lived with his son. Gradley's father owned the house that contained these apartments; in lieu of rent, Flieger performed a variety of maintenance on the house, including repairs to the trap door that separated the cellar from Gradley's apartment.

Flieger and Gradley dated for several years until they broke up in December 1984. He had proposed several times, but she refused to marry him. Gradley was hospitalized that month after breaking her ankle. While in the hospital, she was visited twice by Frank Joubert, a married man who was her son's counselor. Flieger was present when Joubert arrived for his second visit carrying flowers for Gradley. Although Joubert attempted to converse with Flieger, Flieger refused, and instead clenched his fists and turned and stared out the window and at the floor.

On the evening of March 17, 1985, Gradley's birthday, Gradley went out with her son and Joubert. When they returned to Grad-

---

1. The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

ley's residence, Flieger began photographing Joubert and Gradley together. After Joubert left, Flieger and Gradley angrily screamed at one another over the telephone. Flieger told Gradley that she should not date a married man and that he might tell Joubert's wife of the alleged affair, and Flieger's son testified that Flieger was furious as he threatened Gradley with her life. Gradley was so rattled after the telephone altercation with Flieger that she called her son's aunt and Joubert and told them that Flieger had threatened her life. Joubert attempted to convince Gradley to leave, but she refused to let Flieger scare her from her home.

The next morning, on March 18, 1985, Gradley took her son to school, then returned home. About one-half hour later, Shirley Spence, who worked outside on the other side of the street, observed Flieger hurriedly walking from the rear of the house, carrying clothing on hangers and what appeared to be a long object wrapped in newspaper. Although Flieger would chat for fifteen to twenty minutes each morning with Spence, he did not on this morning, and instead ignored Spence's calls. Flieger placed the items in the trunk of his car and drove off so quickly that he almost caused a collision at the corner. He drove past the house at least once that day, but he never stopped.

Gradley was found bludgeoned to death that afternoon. The rear basement door had been forcibly kicked open, and the trap door had been forced open. Nothing had been taken from the apartment, except perhaps a small amount of cash, although most rooms had been searched. Bones in both of Gradley's forearms were broken during her attempts to defend herself. Gradley's death was caused by several interconnected skull fractures the murderer inflicted upon her through repeated blows to her head with a blunt, possibly cylindrical, object. The medical evidence was inconclusive as to the time of Gradley's death, but it indicated that she was alive during the entire attack.

The police interviewed Flieger as part of their investigation. Flieger admitted telling Gradley the night before the murder that he was going to report her alleged affair with Joubert to Joubert's wife, but he did not tell the police of his death threat. He also indicated that he had taken clothing to the cleaners on the morning of the murder, but when he left the house that morning, he had driven in a direction opposite from the cleaning establishment he identified in his statement.

Several months later, Flieger married and moved in with Gloria Brooks. They were married and divorced before his trial. Flieger, in the presence of his son, told Brooks that Gradley got what she deserved and that her death was entirely Joubert's fault because Flieger had caught her and Joubert together at the hospital. On another occasion, Flieger brought into the house a long, heavy, metal flashlight that was made for police officers to use as both a flashlight and a nightstick. Flieger told Brooks, in the presence of her sister and brother-in-law, as he pounded the flashlight into the palm of his hand, that one could use the flashlight as a lethal weapon and get away with the murder. This so frightened Brooks that she hid the flashlight; although other flashlights were readily available, Flieger extensively searched the entire house for that particular flashlight. Flieger was unable to find the flashlight, and Brooks later turned it over to the police.

Flieger was indicted for Gradley's murder eighteen months after her death. The jury convicted Flieger of the first-degree murder of Gradley, and he was sentenced to life imprisonment without the possibility of probation or parole. Flieger appealed. While his direct appeal was pending, he filed pursuant to Missouri Supreme Court Rule 29.15 a motion for postconviction relief, which was denied after an evidentiary hearing. After consolidating his direct and Rule 29.15 appeals, the Missouri Court of Appeals upheld both his conviction and the denial of Rule 29.15 relief. *State v. Flieger*, 776 S.W.2d 25 (Mo.Ct.App.1989).

Flieger then filed in the District Court his petition for a writ of habeas corpus, claiming that he was denied due process because the evidence was not sufficient to support his conviction, his counsel was constitutionally ineffective, and he was denied a fair trial by the state trial court's evidentiary errors. On April 7, 1992, the District Court, pursuant to

the Magistrate Judge's [2] recommendation, denied Flieger's habeas petition. Flieger then served on April 16, 1992 a motion that requested reconsideration under Federal Rule of Civil Procedure 60(b)(6) or, in the alternative, was to serve as a notice of appeal and a request for a certificate of probable cause. The District Court treated this motion as one to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), noted that under Federal Rule of Civil Procedure 5(b) the motion was served when mailed and that it had been mailed timely,[3] and denied the motion on September 29, 1992. Flieger appealed on October 15, 1992.

## II.

### A.

■ Flieger's October 15 notice of appeal stated that he intended to "appeal to the Eighth Circuit Court of Appeals this Court [sic] order of September 29, 1992 dismissing this law suit [sic]." It did not specifically indicate that Flieger was appealing the District Court's April 7 ruling that denied his habeas petition. The state argues that, because Flieger's appeal does not challenge the District Court's September 29 denial of his motion for reconsideration, and instead complains only about the April 7 ruling, we should affirm the District Court's September 29 ruling. Moreover, the state contends, Flieger's April 16 notice of appeal in the alternative is not a legally sufficient notice of appeal of the April 7 ruling because the April 16 motion raised a Rule 59(e) motion before the District Court. Therefore, the state concludes, the District Court's April 7 ruling is not before this Court and we should disregard Flieger's challenges to the District Court's denial of his petition for a writ of habeas corpus. We are not persuaded by the state's argument.

A notice of appeal filed while a Rule 59(e) motion is pending is a nullity. *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 60–61, 103 S.Ct. 400, 403, 74 L.Ed.2d 225

(1982) (per curiam). Accordingly, the state is quite right that Flieger's April 16 alternative notice of appeal is not in itself a legally sufficient appeal of the District Court's April 7 ruling. In this case, however, unlike in *Griggs* and the other cases the state cites, Flieger filed a timely notice of appeal after the denial of his April 16 Rule 59(e) motion. It is obvious that Flieger intended to appeal the April 7 ruling and that Flieger's errant failure to mention that ruling in his notice of appeal was inadvertent. Flieger substantially complied with the requirements of Federal Rule of Appellate Procedure 3(c), and his error did not mislead, surprise, or prejudice the state. Indeed, the state briefed all of the issues raised on this appeal, and it fully argued them at the oral argument. Flieger's efforts constituted "an effective, although inept, attempt to appeal." *See Foman v. Davis,* 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962).

### B.

The District Court issued Flieger a certificate of probable cause to appeal because it found that Flieger's "appeal [was] taken in good faith." Memorandum and Order Denying Motion to Reconsider at 4. The state contends that the District Court applied the wrong standard when determining whether to issue the certificate to Flieger, and that therefore this Court should quash Flieger's certificate of probable cause and dismiss his appeal.

■ A state prisoner may not appeal a final order denying his petition for a writ of habeas corpus "unless the justice or judge who rendered the order or a circuit justice or judge issues a certificate of probable cause." 28 U.S.C. § 2253 (1988). To obtain a certificate of probable cause, a habeas petitioner must show more than just good faith or an absence of frivolity. *Barefoot v. Estelle,* 463 U.S. 880, 894, 103 S.Ct. 3383, 3395, 77 L.Ed.2d 1090 (1983). Instead, the petitioner must make a substantial showing that a federal right has been denied, which requires a

---

2. The Honorable Robert D. Kingsland, United States Magistrate Judge for the Eastern District of Missouri.

3. "A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(e).

showing that the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Lozada v. Deeds,* 498 U.S. 430, 432, 111 S.Ct. 860, 861, 112 L.Ed.2d 956 (1991) (per curiam). Because we are satisfied the certificate of probable cause issued by the District Court is proper even under this higher standard, we now proceed to consider the issues raised by Flieger's appeal. *See* Fed.R.App.P. 22(b).

### C.

■ Flieger claims that the state's evidence was constitutionally insufficient to sustain his conviction for the first-degree murder of Gradley. He claims that the state was unable to offer any direct evidence that linked him to the murder, and instead relied on circumstantial evidence, such as the testimony of various witnesses that Flieger had threatened Gradley's life [4] and the testimony of Flieger's son that he believed Flieger had committed the murder. Flieger concedes that the evidence showed that he had an altercation with the victim, but he claims that it does not lend itself to a finding of a motive for the murder. Moreover, he contends that the evidence does not demonstrate that he was the only person who had an opportunity to perpetrate this crime, and that anyone, including his son, Gradley's son, Spence, or a neighbor, could have murdered Gradley. Flieger argues that the state's evidence comprises inferences piled upon inferences, and he claims that the evidence is constitutionally insufficient to allow the verdict to stand.

■ We review a challenge on collateral attack to the sufficiency of the state's evidence by asking "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The state is "not required to rule out every hypothesis except that of guilt beyond a reasonable doubt." *Perez v. Groose,* 973 F.2d 630, 634 (8th Cir.1992). Moreover, when faced with evidence that allows conflicting inferences, we must presume that the jury resolved such conflicts in the state's favor. *Jackson,* 443 U.S. at 326, 99 S.Ct. at 2793.[5]

■ State law defines the elements of state-law crimes. *Turner v. Armontrout,* 845 F.2d 165, 168 (8th Cir.), *cert. denied,* 488 U.S. 928, 109 S.Ct. 315, 102 L.Ed.2d 333 (1988). The Missouri law in effect at the time Gradley was murdered provided that: "A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." Mo.Rev.Stat. § 565.020.1 (Supp.1992). Missouri law states that "[a] person 'acts knowingly' ... [w]ith respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result." *Id.* § 562.016.3 (1986). "Deliberation," under Missouri law, "means cool reflection for any length of time no matter how brief." *Id.* § 565.002(3). The jury may infer these elements from indirect evidence and the circumstances surrounding the murder. *See State v. Grubbs,* 724 S.W.2d 494, 498 (Mo.) (en banc), *cert. denied,* 482 U.S. 931, 107 S.Ct. 3220, 96 L.Ed.2d 707 (1987); *State v. Light,* 835 S.W.2d 933, 936 (Mo.Ct. App.1992).

After reviewing the record de novo under the *Jackson* standard, we conclude the evidence supporting the jury's verdict is consti-

---

4. We note that the Rule 29.15 court and the Missouri Court of Appeals, *State v. Flieger,* 776 S.W.2d 25, 30 (1989), considered and rejected Flieger's hearsay objections to this testimony. Flieger does not raise any purely evidentiary issues in the present appeal, and properly so, as mere violations of the state's evidentiary rules are not in themselves cognizable on habeas review. *Estelle v. McGuire,* — U.S. —, —, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991).

5. It appears that in the state courts Flieger did not present his challenge to the sufficiency of the evidence as an alleged due process violation under *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and instead claimed only that the trial court violated state law by denying his motion for a directed verdict of acquittal. We decline to consider whether Flieger has procedurally defaulted this claim, however, because neither the parties nor the District Court raised or discussed the issue of a possible procedural bar with respect to this claim.

tutionally sufficient. The jury rationally could have concluded that Flieger murdered Gradley because, as the Missouri Court of Appeals reasoned, "the evidence established motive; opportunity, including knowledge of the manner of entry into the apartment; suspicious conduct in the early morning and during the day of the assault, implying criminal conduct; and, available inferences from defendant's statements of guilty knowledge." *Flieger,* 776 S.W.2d at 28. Furthermore, Flieger's actions clearly satisfy the requirements of Missouri's first-degree murder statute. Based on the evidence at trial, the jury rationally could have concluded that Flieger knowingly caused Gradley's death because in delivering many blows to her head—enough to cause massive fractures to her skull—he would have been practically certain that her death would result from the beating. The jury also rationally could have concluded that Flieger acted after deliberation, as the evidence tended to show that a night passed between his altercation with Gradley and her death; that he waited until she left the next morning; that while she was away he entered her apartment with a long, metal flashlight despite the daylight; that he lay in wait for her until she returned home alone; that he beat her to death by inflicting blow after blow; and that he then left and attempted to go nonchalantly about his daily business. We conclude that the jury rationally could have found beyond a reasonable doubt that Flieger knowingly caused Gradley's death and that in doing so he committed murder in the first degree under Missouri law.

Flieger urges us to exercise caution because the state's case was based upon circumstantial evidence, and to ensure that the jury's verdict did not rest upon inferences piled upon inferences. He cites *United States v. Guzzino,* 810 F.2d 687, 696 (7th Cir.), *cert. denied,* 481 U.S. 1030, 107 S.Ct. 1957, 95 L.Ed.2d 529 (1987), for this cautionary language. We note only that this standard, to the extent it differs from that of *Jackson* or imposes tasks we are not already bound to undertake, is not controlling here and does not govern our inquiry. And to the extent that this standard is consistent with the *Jackson* standard, we have no trouble concluding that the state's evidence is constitutionally sufficient to support Flieger's conviction.

### D.

Flieger raises several claims of ineffective assistance of counsel. He claims that his trial counsel was constitutionally ineffective because he: first, did not present an alibi defense or interview and present alibi witnesses; second, refused to allow Flieger to testify or discouraged Flieger from testifying; third, failed sufficiently to consult with Flieger in preparation for trial; fourth, did not call a witness who would have testified that Flieger did not possess the flashlight at the time of Gradley's murder; fifth, did not object to the medical examiner's report; sixth, did not object to the hearsay testimony of Gradley's son and father that Flieger had threatened to murder Gradley the night before the murder; seventh, did not object to Flieger's son's hearsay testimony of the death threat; and eighth, had Brooks and Flieger's son testify that Flieger had a violent character and reputation. The District Court found that Flieger's third, fourth, fifth, and sixth claims were procedurally barred and refused to consider them, and concluded that his first, second, seventh, and eighth claims lacked merit.

■ We turn first to the questions of procedural bar. Flieger contends that he cannot have procedurally defaulted any ineffectiveness claims he desires to raise in federal court. He reasons that he claimed before the state courts that his counsel was generally ineffective and then supported his allegation with several specific examples; an ineffectiveness claim is a single, indivisible issue that must be considered as a whole; the state court of appeals considered his ineffectiveness claims separately and as a whole; and therefore no specific claim of counsel's ineffectiveness, whether or not raised in state court, can be procedurally barred.

■ A petitioner must present "*both the factual and legal* premises" of his claims to the state courts in order to preserve them for federal habeas review. *Cox v. Lockhart,* 970 F.2d 448, 454 (8th Cir.1992). This standard applies to claims that trial counsel has been

constitutionally ineffective. *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). A habeas petitioner who asserts only broadly in his state petition for relief that his counsel has been ineffective has not immunized his federal habeas claim's specific variations from the effects of the state's procedural requirements. *See Tippitt v. Lockhart,* 903 F.2d 552, 554 (8th Cir.), *cert. denied,* 498 U.S. 922, 111 S.Ct. 301, 112 L.Ed.2d 254 (1990); *Buckley v. Lockhart,* 892 F.2d 715, 719 (8th Cir. 1989), *cert. denied,* 497 U.S. 1006, 110 S.Ct. 3243, 111 L.Ed.2d 753 (1990). Nor has a petitioner who presents to the state courts a broad claim of ineffectiveness as well as some specific ineffectiveness claims properly presented all conceivable specific variations for purposes of federal habeas review. The far-reaching position Flieger advances in this case would undermine the ability of the state courts to review claims of ineffective assistance of counsel and force federal courts to review an endless variety of ineffectiveness claims that the state courts never had the opportunity to consider. We reiterate the settled law of this Circuit that a habeas petitioner must have raised both the factual and legal bases for each ineffectiveness of counsel claim in the state courts in order to preserve the claim for federal review.

Several of the specific ineffectiveness claims Flieger raised pursuant to Rule 29.15 were not, after being rejected by the Rule 29.15 court, included in his appeal to the Missouri Court of Appeals. Those claims are now procedurally barred.[6] *Boyd v. Groose,* 4 F.3d 669, 671 (8th Cir.1993). We may reach the merits of a procedurally barred claim only if Flieger can show either cause for the default and prejudice from the alleged violation of federal law, *Coleman v. Thompson,* —— U.S. ——, ——, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991), or that there would otherwise be a fundamental miscarriage of justice, *Sawyer v. Whitley,* —— U.S. ——, ——, 112 S.Ct. 2514, 2518–19, 120 L.Ed.2d 269 (1992). Flieger does not contend that either of these excuses for his procedural defaults applies. The District Court correctly determined that Flieger failed to raise his third, fourth, and fifth claims when he appealed the denial of his Rule 29.15 motion. Accordingly, Flieger is procedurally barred from raising them here. The District Court erred, however, when it determined that Flieger did not present his sixth claim to the Missouri Court of Appeals; upon reviewing the record, we observe that Flieger presented the claim, but the Missouri Court of Appeals misconstrued it as relating to Flieger's son's testimony. Thus, Flieger's sixth claim is not procedurally barred.

We turn next to those of Flieger's ineffective assistance of counsel claims that are not procedurally barred. To establish that his trial counsel was constitutionally

---

**6.** The Missouri Court of Appeals concluded its opinion with a paragraph that stated: "We find no error in the refusal of post-conviction relief based on any or all the grounds defendant presented to the trial court." *State v. Flieger,* 776 S.W.2d 25, 31 (Mo.Ct.App.1989). The dissent seizes on a strained reading of this statement to argue that the ineffectiveness claims Flieger did not include in his appeal are not defaulted. Flieger clearly defaulted the claims he did not renew on appeal. The dissent seems to be arguing, then, that the Missouri Court of Appeals considered the merits of claims that Flieger did not make on appeal, and, in so doing, excused the procedural bar against those claims.

Quite contrary to the dissent's assertion, the apparent meaning of the quoted language from the opinion of the Missouri Court of Appeals is: "any or all the [ineffectiveness] grounds defendant presented to the trial court [*that he raised on appeal*]." This interpretation is supported by the court's explanation of the scope of its review, where it stated that it would evaluate counsel's performance by "consider[ing] each separate assignment and a comprehensive, collective claim of cumulative effectiveness [sic]." *Id.* at 29. "Assignment" means errors raised on appeal, not claims raised only in a motion court. This statement clearly indicates that the court considered, separately and collectively, only the errors raised on appeal; it cannot be read to mean that the court also considered claims not raised on appeal. The court's extensive analysis, in fact, includes no mention whatsoever of any claim not raised on appeal. It stretches credulity to read the court's conclusion, as the dissent so attempts, to mean "any or all the grounds defendant presented to the trial court [even those that were not raised on appeal]." Because we do not agree with the dissent's creative reading of the opinion of the Missouri Court of Appeals, we cannot accept the dissent's conclusion that the ineffectiveness claims not raised by Flieger in his state-court appeal from the denial of post-conviction relief are not procedurally barred.

ineffective, a habeas petitioner must show that his counsel's performance was deficient and that he was prejudiced by this deficiency. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Counsel's representation was deficient if it "fell below an objective standard of reasonableness," and the petitioner was prejudiced by this deficiency if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* 466 U.S. at 688, 694, 104 S.Ct. at 2065, 2068. Trial counsel's representation is entitled to a strong presumption of reasonableness, and we must not examine counsel's conduct with the aid of hindsight lenses that bring into focus what counsel's best course of action would have been. *Id.* at 689, 104 S.Ct. at 2065. We specifically note that trial counsel's reasonable trial strategies cannot constitute ineffective assistance, even if they are unsuccessful. *Riley v. Wyrick,* 712 F.2d 382, 385 (8th Cir.1983). This Court must independently review the record because the issue of ineffective assistance of counsel presents a mixed question of law and fact, *Laws v. Armontrout,* 863 F.2d 1377, 1381 (8th Cir. 1988) (en banc), *cert. denied,* 490 U.S. 1040, 109 S.Ct. 1944, 104 L.Ed.2d 415 (1989), but the factual findings of state courts, both trial and appellate, are presumed in accordance with 28 U.S.C. 2254(d) (1988) to be correct, *Sumner v. Mata,* 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981).

 Flieger's first claim is that his trial counsel was constitutionally ineffective because he did not present an alibi defense or interview and present alibi witnesses. The Rule 29.15 court and the Missouri Court of Appeals extensively discussed the relevant facts behind Flieger's trial counsel's decision: Flieger serviced customer accounts for a security company. The company's president was prepared to testify that Flieger's reports, which had been prepared and filed by Flieger after Gradley's murder, indicated that on the day of Gradley's murder Flieger had called on a representative of Hunter Packing Company at 10:00 a.m. and had twenty-two service calls at unspecified times later that day; no one saw Flieger in the office on the day in question; and Flieger was in the office the next day, but he showed

no remorse over Gradley's death. The Hunter representative with whom Flieger met that day was prepared to testify that Flieger showed up for their meeting well after 10:00 a.m.; Flieger was acting suspiciously; and Flieger requested him to sign a form while Flieger waited, although Flieger's usual practice was to leave the form and allow the representative to mail it in. Flieger's trial counsel decided not to call these witnesses because the alibi defense was on shaky footing, but he was able to present the defense to the jury through other witnesses.

We conclude that Flieger's trial counsel's decisions on this matter were not objectively unreasonable. Indeed, it appears to us that this testimony could have done Flieger more harm than good. Counsel reasonably could have concluded that, especially given that the time of Gradley's death was unclear, testimony that Flieger indicated in his reports that he called on a customer at 10:00 a.m., did not show up until well after the meeting's 10:00 a.m. scheduled time, and was acting oddly would not prove helpful to the defense. Flieger's trial counsel's decision was a matter of reasonable trial strategy, and Flieger has not met *Strickland*'s first requirement for a showing of ineffective assistance of counsel. In addition, given that Flieger's alibi defense was presented through the testimony of other witnesses, Flieger has not shown *Strickland* prejudice because he has not demonstrated that the result of his trial probably would have been different had these particular alibi witnesses testified.

 Flieger's second claim of counsel's ineffectiveness is that counsel refused to allow Flieger to testify or discouraged Flieger from testifying at trial. The state courts found that counsel advised Flieger not to testify because his alibi defense was weak; counsel told Flieger that the ultimate decision on whether Flieger was to testify would have to be made by Flieger; and Flieger wanted to tell his story to the jury, but chose not to override counsel's advice not to testify. Flieger has not demonstrated that his counsel's advice was objectively unreasonable. Nor has he demonstrated *Strickland* prejudice because he has not shown that, had he

testified, the result of his trial probably would have been different.

■ Flieger's sixth claim is that his attorney was ineffective because he failed to object to the allegedly hearsay testimony of Gradley's son and father that Flieger had threatened to kill Gradley the evening before she was found dead; his seventh claim makes the same allegation with respect to his son's testimony. The Rule 29.15 court, however, held that Gradley's son's and father's testimonies were not hearsay because they were admissible to show the bad blood between Gradley and Flieger and thus to show Flieger's motive and intentions. The Missouri Court of Appeals held that Flieger's son's testimony was not hearsay. *Flieger,* 776 S.W.2d at 30. Flieger has not shown how his counsel's failure to make baseless hearsay objections was objectively unreasonable, and we conclude that his sixth and seventh ineffectiveness claims are without merit.

■ Flieger's eighth and last contention is that his trial counsel was ineffective because on cross-examination he elicited testimony from Brooks and Flieger's son that Flieger had a violent character and reputation. Flieger admitted before the Rule 29.15 court that his son's testimony demonstrated his intense bias toward Flieger. The state courts found that Flieger's trial counsel intended to discredit the testimony of both witnesses by showing that both were biased against Flieger. Flieger has not shown that trial counsel's performance was objectively unreasonable because he attempted to discredit the state's witnesses in this manner. Flieger's trial counsel's strategy was reasonable, so this claim also must fail.

#### E.

■ Finally, Flieger argues that his due process rights were violated by the trial court's admission of improper evidence. He claims that the admission of Brooks's testimony was unfair because ex-spouses are biased and their testimony is inherently unreliable, and that the admission of the flashlight allowed the jury improperly to speculate that the flashlight may have been the murder weapon. Before the state courts, however, Flieger presented these issues only as alleged violations of the state's rules of evidence—he contended that the admission of Brooks's testimony contravened the privilege protecting marital communications and that the flashlight had been admitted without proper authentication. Although he reached the merits of Flieger's due process claims, the Magistrate Judge, whose recommendations were adopted by the District Court, stated that these claims were procedurally barred because Flieger had not objected at trial to the alleged violations of the state's rules of evidence.

We agree that Flieger's due process claims are procedurally barred. Whether or not Flieger objected at trial to the admission of this evidence, it is clear that he failed to claim in the state courts that the alleged evidentiary violations amounted to denials of his federal due process rights. Because the state courts never had the opportunity to consider both the factual and legal bases for Flieger's federal due process claims, *see Cox,* 970 F.2d at 454, they are procedurally defaulted. Flieger does not argue that he meets *Coleman*'s cause-and-prejudice or *Sawyer*'s fundamental-miscarriage-of-justice standard for his procedural default of his due process claims. Accordingly, we do not reach the merits of Flieger's due process claims.

#### III.

For the reasons stated, we affirm the District Court's denial of Flieger's petition for a writ of habeas corpus.

HEANEY, Senior Circuit Judge, concurring in part and dissenting in part.

The record is abundantly clear that Robert Flieger presented to the Missouri state courts *all* of his claims of ineffective assistance of counsel that he alleges in his habeas petition. Accordingly, I have no alternative but to dissent.[1]

---

1. I agree with the majority that Flieger's appeal of the district court's denial of his writ of habeas corpus is properly before this court. I am satisfied as well that the certificate of probable cause

Flieger first raised the inadequacy of his trial counsel's representation in a motion for a new trial that he filed on June 1, 1987.[2] After a hearing at which Flieger himself testified, the motion was denied. Thereafter, he filed a direct appeal alleging, among other things, that he was deprived of his Sixth Amendment right to effective assistance of counsel. In his brief, he cited numerous, specific examples of inadequacy on the part of trial counsel.

On June 20, 1988, Flieger filed a 29.15 motion for post-conviction relief, citing nearly verbatim the same examples of misfeasance and nonfeasance on the part of trial counsel that he presented on direct appeal.[3] Among the more important were that *"attorney Kinghorn did not properly and adequately consult with [Flieger] prior to trial and failed to properly prepare [his] case for trial"*; that he "failed to interview numberous [sic] witnesses on behalf of [Flieger] even though requested to do so"; and that he "failed to call alibi witnesses who had been subpeoned [sic] and were available outside the courtroom during the trial and ... would have testified to the whereabouts of [Flieger] at the time of the alleged murder." [4] Defendant's Rule 29.15 Motion at 3 (emphasis added). An evidentiary hearing was held before Judge Dowd on July 29, at which time defense counsel was asked to submit a memorandum in support of his motion.[5] On September 27, 1988, Judge Dowd denied Flieger's Rule 29.15 motion.

Thereafter, Flieger filed a notice of appeal to the Missouri Court of Appeals for the Eastern District alleging that *"the trial courts [sic] action in overruling petitioner's 29.15 motion was clearly erroneous because the evidence shows that counsel made errors so serious that counsel was not functioning as ... counsel guaranteed by the 6th Amendment."* Defendant's Rule 29.15 Appellate Brief at 1 (emphasis added). Flieger, once again, cited numerous, specific examples of ineffective assistance of counsel, all of which were included in his Rule 29.15 motion and each of which was supported by relevant state case law.

The Missouri Court of Appeals heard oral argument and affirmed the trial court's denial of Flieger's Rule 29.15 in a consolidated disposition with his direct appeal. *State v. Flieger,* 776 S.W.2d 25 (Mo.Ct.App.1989). The court could not have been more explicit in announcing that it had reviewed the entire record and had considered *all* of the post-conviction claims that Flieger raised: "We find no error in the refusal of post-conviction relief *based on any or all of the grounds defendant presented to the trial court."* [6] *Id.* at 31 (emphasis added).

This court's view that Flieger's "far-reaching" position "would undermine the ability of the state courts to review claims of ineffective assistance of counsel and force federal courts to review an endless variety of ineffectiveness claims that the state courts never had the opportunity to consider" neither squares with the Missouri Court of Appeals's opinion nor with the record in this case. We have no business telling Missouri state courts what they did or did not review, or did or did

---

issued by the district court is proper. Regarding the substantive claims Flieger raises, I believe that the circumstantial evidence in this case, although not strong, is constitutionally sufficient to sustain his conviction. Finally, I agree that Flieger's due process claims with respect to certain evidentiary matters are procedurally barred for the reasons stated by the court.

2. Flieger dismissed his trial counsel, Edward Kinghorn, and hired Claude Hanks to represent him on appeal. Mr. Hanks represented him in his motion for a new trial.

3. The motion was presented to Judge Robert G. Dowd, Jr., of the Circuit Court of the City of St. Louis, the same judge who presided at trial.

4. In addition, Flieger listed fourteen other specific instances of ineffective assistance of counsel, including all of those claims discussed by the majority.

5. Flieger's counsel filed his memorandum in support of his Rule 29.15 motion on August 12, 1988; the state filed its suggested findings of fact and conclusions of law on August 22, 1988.

6. Whatever "creativity" has been exercised in interpreting the language of the Missouri Court of Appeals here is not that of the dissenter, but that of the majority. *See supra* at 885 n. 6. The Missouri court's language is unambiguous, and there is no need for this court to find ambiguity where none exists.

not decide, and that is precisely what a majority of this panel seeks to do.

Under these circumstances, I do not believe that it is necessary to elaborate on all of the ineffective assistance of counsel claims that the majority discusses. I would simply state that were these the only deficiencies of counsel, I would be inclined to affirm, but they are not. When considered in connection with trial counsel's absolute failure to consult adequately with his client in preparation for trial, a strong case of ineffectiveness can be made.

A reasonably competent attorney would not, as trial counsel did in this case, have reserved a mere forty-five minutes of his time to meet with a client charged with first-degree murder. Trial counsel met with Flieger in jail only three times—each session averaging only fifteen minutes [7]—from the date Flieger was arrested until the beginning of trial. Defendant's Rule 29.15 Hearing Tr. at 29, 59.[8] Apart from this, the only other consultation he had with Flieger was at trial, but even there the sessions were abbreviated and punctuated by recesses during which Flieger was locked up and counsel was "nowhere around." *Id.* at 46.

Under these circumstances, this court has only two alternatives: (1) to grant the writ unless a new trial is held within a reasonable period of time, or (2) to remand the case to the district court with directions to conduct an evidentiary hearing and complete the record with respect to all of Flieger's ineffectiveness claims. I believe that the latter is the preferable course of action, not only because the district court will be fully apprised of the defendant's ineffectiveness claims, but because both parties will have an opportunity to brief fully and discuss precisely what the Missouri Court of Appeals meant when it refused to grant relief on the grounds presented to the trial court. Accordingly, I dissent.

---

**7.** Although Kinghorn did not give a specific time limit for the meetings, he prefaced the few visits he had with Flieger with statements to the effect that "he had to be in court shortly." Defendant's Rule 29.15 Hearing Tr. at 45. The first time he met with Flieger he told him that he had twenty minutes. *Id.* The next time he visited "he was watching his watch and [ ] said he had to go but he would get back with me." *Id.* Kinghorn himself conceded that their "time at the jail was rather limited." *Id.* at 71.

**8.** A "reasonable portion" of these meetings involved explaining the trial process to Flieger, leaving little time—and certainly far less than would be expected from reasonably competent counsel in a capital murder case—to discuss trial strategy and all of the relevant facts needed to conduct a proper investigation. At the very least, lengthier, less-hurried meetings might have aided counsel in developing a more positive character profile of Flieger (contrary to the negative one he brought out at trial) that could have been used to highlight Flieger's exemplary background, *e.g.*, that he had no prior arrests, that he was employed as a supervisor for a security company at the time of his arrest, and that he was a fire captain for St. Louis County for thirteen years. *Id.* at 32–33, 72.