34 F.3d 582
 Todd M. MILLER, Appellee/Cross-Appellant,
v.
Walter LEAPLEY, Warden, South Dakota State Penitentiary;
Mark W. Barnett, Attorney General, State of South
Dakota, Appellants/Cross-Appellees.
 Nos. 93-2248, 93-2255.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 14, 1994.
Decided July 15, 1994.
 
 Mark Smith, Asst. Atty. Gen., Pierre, SD, argued, for appellant.
 David Vrooman, Sioux Falls, SD, argued, for appellee.
 Before MAGILL, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and HANSEN, Circuit Judge.
 HANSEN, Circuit Judge.
 
 
 1
 Todd M. Miller filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254, attacking the validity of his state court convictions for first-degree murder, aggravated kidnapping, possession of ransom money, and forgery. The district court granted the writ in part, finding that the evidence presented at trial was insufficient to support the guilty verdicts on the murder and kidnapping counts. The Warden of the South Dakota State Penitentiary and the Attorney General of the State of South Dakota (collectively referred to as "the state") appeal the district court's grant of the writ. Miller cross-appeals, arguing that although the district court properly granted the writ, the court also should have granted the writ on the ground that improper expert testimony denied Miller a fair trial. We reverse the district court's grant of habeas relief and affirm on the cross-appeal.
 
 I. Background
 
 2
 The facts underlying Miller's convictions are set forth at some length in the opinion of the Supreme Court of South Dakota in Miller's direct appeal. See State v. Miller, 429 N.W.2d 26 (S.D.1988). We presume them to be correct, see 28 U.S.C. Sec. 2254(d), and summarize them for the purposes of this opinion as follows:
 
 
 3
 Miller's state court convictions evolved out of the disappearance and death of 19-year-old Michael Kinney. Kinney and Miller were acquaintances. Miller and his father were in the horse business near Aberdeen, South Dakota. On May 8, 1985, Kinney left home as usual to attend a college class in nearby Aberdeen and never returned. The next day, his car was found abandoned on a side road near his home. On May 10, 1985, his mother received a phone call from an unidentified male who instructed her to retrieve an envelope left under a pay phone in an Aberdeen bar to find out what had happened to her son. The envelope contained a ransom note demanding $200,000 in exchange for Kinney's safe return. Three days later, the caller again contacted Kinney's mother and designated a park in Aberdeen where she should deliver the ransom money at 9:00 p.m. that night. The caller said that Kinney was okay, the caller knew what Kinney had been wearing when he disappeared, and the caller said that Kinney could not speak to her until "I get the money."
 
 
 4
 State and federal law enforcement officers observed Miller retrieve the money from the designated drop spot in an Aberdeen park. Miller was driving a blue Oldsmobile. He transferred to a Camaro, picked up his 17-year-old sister, and drove across the state border. Law enforcement officers arrested Miller in Minnesota in possession of most of the ransom money.
 
 
 5
 After his arrest, Miller began to weave a tangled web of explanations. At first, Miller explained that he was travelling to Alexandria, Minnesota, because a man named Jacobs intended to buy a horse from him and that Jacobs had given him some travelling money in advance. At that point, officers asked Miller where "Mike" was without mentioning the victim's last name or that "Mike" was in any sort of trouble. Miller responded, "I wouldn't hurt Mike McNeil. He's my best friend."[1] Next, Miller changed the story by telling officers that Jacobs had asked him to pick up a package in the park, deliver the package, and in exchange, Mr. Jacobs would buy a horse from Miller for $45,000. Miller said that he assumed Jacobs was involved with illegal drugs. In a third version, Miller said that Jacobs had instructed him by telephone to call Kinney's mother, deliver the envelope to the bar, retrieve the money, and then deliver it to a motel in Alexandria. This time Miller admitted that he fabricated the horse purchase as a cover story and asserted that Jacobs threatened to harm Kinney or Miller's newborn child if Miller refused to cooperate. Based on this story, agents took Miller to the hotel to wait for Jacobs under observation, but Jacobs never showed up. Law enforcement officers then took Miller back to South Dakota where Miller told a totally new story involving two unknown men who accosted him at an Aberdeen bar on May 7, 1985. According to Miller, the men threatened to harm Kinney and Miller's baby unless Miller delivered the envelope to Kinney's mother and delivered the ransom money to them in Minnesota. On May 18, 1985, Miller offered his fifth and final version of the story, implicating Kinney, the victim, as the initiator of an extortion scheme against his own mother. Again Miller claimed that he was threatened into cooperation, and he admitted that he had written the ransom note and made the calls to Kinney's mother as part of the scheme.
 
 
 6
 On May 28, 1985, a farmer found Kinney's bludgeoned, maggot-ridden corpse in an old icehouse seven miles west of Aberdeen. Kinney had been shot three times with a .22 caliber gun, and there was evidence of head wounds apparently inflicted by blows from a square-edged instrument. Either the gunshots or the blows would have inflicted death, but the gunshots were the actual cause of death. There was no indication that Kinney had been killed in the icehouse; the body appeared merely to have been dumped there.
 
 
 7
 At trial, Miller attempted to present an alibi defense based upon his expert's estimate of the time of death. A forensic entomologist, expert witness for the defense, testified that Kinney died around May 21 or May 22, 1985. Miller argued that because he was in jail from May 14 through May 23, he could not have accomplished the murder. The prosecution presented testimony of the doctor who performed the autopsy on Kinney's body. He testified that some food particles found in Kinney's stomach were consistent with the last meal Kinney was known to have eaten on May 8, 1985. This doctor estimated that the body could have been dead for from one to four weeks when discovered on May 28. Given this estimation of the time of death, the jury could have found that Kinney's death occurred before Miller's arrest. A forensic anthropologist estimated the time of death to have been 18 to 20 days before the body was found. This estimate also would support the prosecution's theory, but this estimate was later found by the Supreme Court of South Dakota to be scientifically incompetent.
 
 
 8
 Other testimony at trial indicated that Miller's father was in severe financial difficulty, that Miller wanted to help him, and that a land payment was delinquent and due on May 14, 1985, the day after Miller retrieved the ransom money. Hair, fiber, and blood samples were found in the trunk of Miller's blue Oldsmobile. The hair and fiber samples matched samples taken from Kinney's body and clothes. Based upon the hair and fiber samples tested, an expert testified that there was only a very small chance that Kinney's body had not been in the trunk of the blue Oldsmobile. The blood stain found in the trunk appeared to match the sample taken from Kinney's body, but the blood from the trunk had deteriorated so that the test was not conclusive. Miller's handwriting matched handwriting on a forged check drawn on Kinney's account after Kinney disappeared. Kinney had been carrying his checkbook at the time he disappeared, but it was never found. Witnesses had seen Miller washing the blue Oldsmobile at least twice after Kinney disappeared, once in the rain. A tire iron (a square-edged instrument) was missing from the trunk of the Oldsmobile. A live .22 caliber round was found in Miller's Camaro. The bullet could not be conclusively matched to the ones that killed Kinney because those were deformed on impact.
 
 
 9
 The trial court instructed the jury on the crimes charged against Miller and also gave an aiding and abetting instruction. During deliberations, the jury asked whether Miller could be found guilty of murder if he aided and abetted only the kidnapping, and the trial court answered affirmatively. The jury convicted Miller of (1) first-degree murder while perpetrating a kidnapping, (2) kidnapping for ransom and by inflicting gross permanent physical injury on the victim, (3) possession of ransom money, and (4) forgery. The trial court sentenced Miller to life imprisonment on the murder and kidnapping charges, 15 years of imprisonment for possession of ransom money, and 5 years on the forgery count, all to run concurrently.
 
 
 10
 The Supreme Court of South Dakota affirmed Miller's convictions holding, in part, that the trial court did not err in failing to change the venue, that admission of the forensic anthropologist's incompetent testimony was not prejudicial but merely cumulative, that the evidence was sufficient to sustain Miller's convictions, and that the trial court did not err by submitting an aiding and abetting instruction. 429 N.W.2d at 36-42. Miller subsequently filed a state habeas action, alleging ineffective assistance of counsel, which was denied. The Supreme Court of South Dakota affirmed the denial of Miller's habeas petition, finding that Miller's trial counsel "did an exemplary job in vigorously representing" Miller. Miller v. Leapley, 472 N.W.2d 517, 519 (S.D.1991).
 
 
 11
 Having exhausted his state court remedies, Miller sought a writ of habeas corpus in federal district court challenging the constitutionality of his convictions. As grounds for granting the writ, Miller claimed ineffective assistance of trial counsel, the trial court's failure to grant a change of venue, insufficient evidence to support the murder and kidnapping convictions, admission of incompetent evidence, and inclusion of the aiding and abetting instruction. The district court referred the case to a magistrate judge for a report and recommendation. The magistrate judge concluded that there was no constitutional infirmity in the assistance Miller received from trial counsel, in the trial court's failure to grant a change of venue, or in the admission of the forensic anthropologist's incompetent estimate of the time of death. However, the magistrate judge concluded that the evidence presented at trial was constitutionally insufficient to support Miller's convictions on the murder and kidnapping counts and that the trial court erred by giving an aiding and abetting instruction. The district court adopted the report and recommendation to the extent that it concluded that "there was insufficient evidence presented at trial for the jury to rationally conclude that petitioner was guilty of " murder and kidnapping. (Appellants' Addend. at A36.) The district court issued a writ of habeas corpus discharging Miller's murder and kidnapping convictions, but the court did not grant relief on the possession of ransom money or forgery counts. The state appeals, and Miller cross-appeals.
 
 II. Discussion
 
 12
 The magistrate judge concluded, and the district court agreed, that "there is nowhere any evidence as to who actually killed or struck Michael Kinney or is there any inkling of the circumstances under which his death occurred." (Jt.App. at 37.) On appeal, the state contends that the district court ignored the proper standard of review for sufficiency of the evidence and improperly substituted its own judgment on the facts. We agree.
 
 
 13
 The scope of our review for a collateral challenge to the sufficiency of the state's evidence is extremely limited. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); Flieger v. Delo, 16 F.3d 878, 883 (8th Cir.1994) (quoting Jackson ). The state need not "rule out every hypothesis except that of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 326, 99 S.Ct. at 2792; Flieger, 16 F.3d at 883. We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that resolution. Jackson, 443 U.S. at 326, 99 S.Ct. at 2793; Flieger, 16 F.3d at 883; see also, Cassell v. Lockhart, 886 F.2d 178, 179 (8th Cir.1989) (stating it will be "a rare case" for a federal habeas court to disagree with a state court's sufficiency of the evidence determination), cert. denied, 493 U.S. 1092, 110 S.Ct. 1164, 107 L.Ed.2d 1067 (1990). We review the record de novo under the Jackson standard. See Flieger, 16 F.3d at 883.
 
 
 14
 The essential elements of a state crime are defined by state law. Flieger, 16 F.3d at 883. At issue in this appeal are the offenses of first-degree felony murder and aggravated kidnapping. Homicide is "the killing of one human being by another." S.D. Codified Laws Ann. Sec. 22-16-1 (1988). A homicide constitutes first-degree felony murder in South Dakota "when committed by a person engaged in the perpetration of, or attempt to perpetrate, any arson, rape, robbery, burglary, kidnapping ..." S.D.Codified Laws Ann. Sec. 22-16-4. Aggravated kidnapping occurs when a person abducts and detains a victim for ransom and when the person inflicts a gross permanent physical injury on the victim. S.D.Codified Laws Ann. Sec. 22-19-1(1). Any person who aids and abets another in the commission of a crime "is legally accountable, as a principal to the crime." S.D.Codified Laws Ann. Sec. 22-3-3; see also State v. Menard, 424 N.W.2d 382, 384 (S.D.1988).
 
 
 15
 Viewed in the light most favorable to the prosecution, the evidence supports the jury's verdicts. Miller contacted Kinney's mother demanding ransom money in exchange for the safe return of Kinney. Miller then retrieved the ransom money from the designated location, and when apprehended, Miller was quick to state that he would never hurt Kinney. Miller told the police five differing and conflicting stories. First he claimed to be innocently travelling to Minnesota to complete a horse deal with Jacobs. Then Miller claimed that he was delivering the money to Jacobs in return for a promised fee. Later Miller said that Jacobs had instructed him to deliver the ransom notes and make the calls and that he cooperated because Jacobs threatened to harm Kinney and Miller's newborn baby. When Jacobs failed to materialize, Miller told a new story of two unknown men who threatened him into cooperation. Finally, Miller implicated Kinney in an extortion scheme.
 
 
 16
 Kinney's body then was discovered beaten by a square-edged instrument and shot to death with a .22 caliber gun. Although no murder weapon was found, a .22 caliber bullet was found in Miller's Camaro and a square-edged tire iron was missing from the blue Oldsmobile that Miller drove when he picked up the ransom money. Very damaging physical evidence of hair, fiber, and blood samples supported a conclusion that Kinney's body had been in the trunk of the blue Oldsmobile. Although experts offered conflicting evidence on the time of death, there was testimony from which the jury could conclude that Miller had an opportunity to commit the crimes before his arrest. Additionally, the evidence demonstrated that Miller had a motive to commit the crimes.
 
 
 17
 Much of the evidence on the murder and aggravated kidnapping charges was circumstantial, but a lack of direct evidence is not fatal to the verdict. In South Dakota, it is permissible to prove all elements of a crime, including murder, by circumstantial evidence so long as the inferences from that evidence support a rational theory of guilt. State v. Davi, 504 N.W.2d 844, 856 (S.D.1993); State v. Ashker, 412 N.W.2d 97, 105 (S.D.1987). Furthermore, " 'to support a conviction of circumstantial evidence, it is not necessary to exclude every hypothesis of innocence.' " Davi, 504 N.W.2d at 857 (quoting State v. Ashley, 459 N.W.2d 828, 832 (S.D.1990)). We believe that the district court focused unduly on what the evidence did not show and that in its search for a smoking gun, the district court ignored the rational inferences that could be drawn from the evidence presented at trial. In affirming Miller's convictions, the South Dakota Supreme Court concluded that "[t]he evidence is more than adequate." Miller, 429 N.W.2d at 38. After conducting a de novo review, we agree. The inferences that arise from the evidence presented at trial, when viewed in the light most favorable to the prosecution, support a rational hypothesis of guilt and are such that a rational trier of fact could have found guilt beyond a reasonable doubt. See Jackson, 443 U.S. at 319, 99 S.Ct. at 2789.
 
 
 18
 The district court found that the state trial court erred in submitting an aiding and abetting instruction because Miller was neither indicted as an aider and abettor nor informed of whom he allegedly aided and abetted. The district court also concluded from the jury's question during deliberations that the jury convicted Miller on an aiding and abetting theory. Under South Dakota law, an aider and abettor "is legally accountable, as a principal to the crime." S.D.Codified Laws Ann. Sec. 22-3-3. The state is not required to allege the theory of aiding and abetting in the indictment because one may be convicted as an aider and abettor even though not charged in that capacity. See State v. Johnson, 272 N.W.2d 304, 305 (S.D.1978); State v. Zemina, 87 S.D. 291, 206 N.W.2d 819, 824-25 (1973). In view of the lack of a distinction between the accountability of a principal or of an aider and abettor, "it is irrelevant whether the jury convicted the defendant under one theory or the other." State v. Boardman, 264 N.W.2d 503, 508 (S.D.1978). As long as a rational hypothesis of guilt is supported by the evidence, "[i]t [is] not necessary for the State to prove precisely how defendant participated." State v. White, 269 N.W.2d 781, 784 (S.D.1978).
 
 
 19
 From the time of arraignment, Miller was on notice that the state was also proceeding under an aiding and abetting theory. In response to Miller's request for a bill of particulars, the state trial court ordered the prosecution to disclose the names of any persons that Miller allegedly aided and abetted if they became known to the state. The state did not identify a principal other than Miller, contending that if any such person existed, the identity of that person was known only to Miller. The aiding and abetting theory originated from Miller's own statements to police concerning unknown persons who were involved in the kidnapping, and the instruction was given in response to those statements and Miller's theory of defense. Even if the instruction was given in error under state law, a habeas petitioner is not entitled to relief on the basis of an error in the jury instructions unless "a federal constitutional right was not adequately protected by the instructions given to the jury." Frey v. Leapley, 931 F.2d 1253, 1254 (8th Cir.1991). Miller was given notice of the aiding and abetting theory, Miller's own statements justified the instruction, and we have already determined that the evidence was sufficient to support Miller's convictions of murder and kidnapping even without the aiding and abetting instruction. We see no constitutional error.
 
 
 20
 Miller filed a cross-appeal, arguing that the district court also should have granted the writ on the ground that the incompetent expert testimony of the forensic anthropologist (estimating the time of death to be before the time when Miller was in jail) was so prejudicial that it denied him a fair trial. We disagree for the reasons stated by the Supreme Court of South Dakota and the magistrate judge.
 
 III. Conclusion
 
 21
 We hold that the evidence was sufficient to sustain Miller's convictions. Further, we find no constitutional error in the state trial court's decision to instruct on the theory of aiding and abetting, and that the incompetent expert testimony was not so prejudicial as to deprive Miller of a fair trial. Accordingly, we reverse the district court's judgment granting habeas corpus relief and remand with instructions for the district court to deny Miller's petition for a writ of habeas corpus.
 
 
 
 [1]
 Kinney's mother's name was Sandra McNeil