**STATE of Missouri, Respondent,**

v.

**Rodney DEAN, Appellant.**

**Rodney DEAN, Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. WD 47743 and WD 49628.

Missouri Court of Appeals,
Western District.

May 16, 1995.

Rebecca L. Kurz, Asst. Appellate Defender, Kansas City, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before HANNA, P.J., and BERREY and SPINDEN, JJ.

SPINDEN, Judge.

Rodney Dean asserts four points of error in this appeal challenging his convictions of first degree robbery and armed criminal action and challenging the denial of his Rule 29.15 motion for postconviction relief. He complains (1) that the state did not prove his guilt beyond a reasonable doubt, (2) that the trial court permitted the prosecution to use its peremptory strikes to remove five venire persons for racial reasons, (3) that the trial court wrongly sentenced him as a Class X offender because it did not apply § 558.019 as recently amended, and (4) that his trial attorney did not exercise the customary skill and diligence of a reasonably competent attorney. We reject all four points.

Dean's convictions grew out of an incident at a Kansas City service station on July 17, 1992, in which Leonard Shephard was robbed of about $350. Shephard was pacing inside the convenience store of the service station, waiting for the cashier to tabulate the amount he owed. He held the cash in his

hand as he paced. He suddenly was hit in the head. He spun around and was confronted by a man pointing a handgun at him. The man demanded Shephard's cash. As Shephard handed the money to him, the cashier, Ricky Vaughn, who knew the assailant, shouted, "What are you doing, Rodney? What are you doing." The assailant did not respond and ran from the store with Shephard's money.

■ In his first point, Dean complains that the state did not prove his guilt beyond a reasonable doubt. The trial court erred, he contends, in denying his motion for judgment of acquittal at the close of all the evidence because the state did not prove that he was the person who robbed Shephard.

Shephard could not identify Dean as the perpetrator. He did testify that the cashier called the assailant Rodney. Vaughn, the cashier, testified that Dean was in the station during the incident and that Dean was armed with a handgun. Although he did not see Dean point the gun at Shephard or take Shephard's money, he heard Dean say, "Give me the money." He said he looked up and saw Dean standing next to Shephard.

We agree with the state's argument that, although neither witness' testimony was sufficient when considered in isolation, together their testimony was adequate to support the jury's verdict. Vaughn's testimony established that Dean was at the station and armed with a handgun at the time of the robbery. He identified Dean as the person who asked for Shephard's money. Although Shephard could not identify Dean as the man who robbed him, his description matched Dean's appearance. The jury could reasonably conclude from Vaughn's and Shephard's testimony that Dean was the assailant. Dean's point is without merit.

■ Dean's second point concerns the state's use of five of its peremptory strikes to remove five blacks from the venire panel. He contends that the state's proffered reasons for the strikes were pretextual because the state did not strike a white juror who was similarly situated. He relies on *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

The five jurors said during *voir dire* that they had been customers at the service station. The prosecutor said he wanted to remove all the station's customers because Vaughn would be a key state witness, and he did not want anyone who might have had a bad experience with Vaughn serving on the jury. Vaughn was not available during *voir dire* to ask the jurors whether they recognized him.

Dean asserts that this was pretextual because a white juror was not removed after acknowledging that he "live[d] around [the station] and ha[d] friends there." Unlike the black jurors, the white juror did not say that he had been a customer or ever been in the station. He said that he and his friends lived in the area of the station.

■ The trial court's overruling Dean's objections to the state's striking the five black jurors was not clearly erroneous. The white juror was not similarly situated. Considering the totality of the circumstances, including the trial court's opportunity to observe the prosecutor's demeanor, we conclude that Dean did not prove that the state's proffered reason was merely pretextual. A trial court has much discretion in determining the plausibility of a prosecutor's explanation for his or her strikes. *State v. Gray,* 887 S.W.2d 369, 384 (Mo. banc 1994), *cert. denied,* — U.S. —, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995). We discern no reason for concluding that the trial court abused its discretion. Dean's point is without merit.

■ In point three, Dean complains that the trial court wrongly sentenced him as a Class X offender, which requires him to serve 80 percent of his 15–year sentence. Instead of sentencing Dean under § 558.019, RSMo Cum.Supp.1992, Dean contends that the court should have employed § 558.019.2, RSMo 1994. Dean contends that the court could not require that he serve 80 percent of his sentence under the new statute.

The trial court correctly sentenced Dean as a Class X offender under the previous statute. The new statute, by its own terms, is applicable "only to offenses occurring on or after August 28, 1994." Section 558.019.7, RSMo 1994. The offense for which Dean

was convicted occurred on July 17, 1992. The new statute does not apply.

Under § 558.019, RSMo Cum.Supp.1992, a Class X offender is a person who has pleaded guilty or has been found guilty of three or more felonies committed at different times and has served more than 120 days in prison. The state established that Dean had three prior felony convictions, each for tampering in the first degree and committed at different times for which he had served more than 120 days in prison. The trial court properly sentenced him as a Class X offender.

Dean relies on § 1.160, RSMo 1986, to argue that the new statute should apply to his case. Section 1.160 was amended on August 28, 1993, to say:

No offense committed and no fine, penalty or forfeiture incurred, or prosecution commenced or pending previous to or at the time when any statutory provision is repealed or amended, shall be affected by the repeal or amendment, but the trial and punishment of all such offenses, and the recovery of the fines, penalties or forfeitures shall be had, in all respects, as if the provision had not been repealed or amended, except:

(1) That all such proceedings shall be conducted according to existing procedural laws; and

(2) That if the penalty or punishment for any offense is reduced or lessened by any alteration of the law creating the offense prior to original sentencing, the penalty or punishment shall be assessed according to the amendatory law.

Because of the provision in § 1.160(2) that a change in punishment be legislated "prior to original sentencing," the changes in § 558.019 would not be applicable to his case. The changes in § 558.019 of which Dean seeks to take advantage did not take effect until August 28, 1994, more than a year after he was sentenced.

Dean argues, however, that when he was sentenced the phrase "prior to original sentencing" was not in § 1.160(2). He says applying the amendment to § 1.160(2) to him would be *ex post facto* application prohibited by Mo. CONST. art. I, § 13 (1945). We dis-

agree. The revision of § 1.160 did not increase Dean's punishment, alter the elements of the offenses, or eliminate any previously-recognized defenses. It was not, therefore, an *ex post facto* law. *Collins v. Youngblood*, 497 U.S. 37, 42, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990). Moreover, even if we were to accept his contention, § 1.160, as it was phrased when he was sentenced, provided that it would be applicable only if "the penalty or punishment for any offense is reduced or lessened by any alteration of the law creating the offense." The change which Dean wants to take advantage of occurred in § 558.019, not the statute creating the offenses, which were §§ 569.020 and 571.015.1. *See State v. Williams*, 844 S.W.2d 562, 563–64 (Mo.App.1992). Furthermore, § 1.160 was not applicable because § 558.019 did not reduce or lessen the penalty or punishment for any offense. His point is without merit.

▪ In his fourth point, Dean challenges the denial of his Rule 29.15 motion for post-conviction relief. He asserts that he established that his trial attorney was ineffective and fell below a performance level which could be expected of a reasonably competent attorney. Dean points to a single incident: his attorney's failure to cross-examine Vaughn about his criminal record. Vaughn admitted in direct examination that he had been convicted of second degree robbery and unlawful use of a weapon.

▪ In this case, Dean singles out an alleged, isolated failure and argues that it establishes that his attorney was incompetent. He makes no effort to show that his attorney's overall performance fell short of established acceptable levels of performance. Even if Dean were correct in his assertion that a reasonably competent attorney would have cross-examined Vaughn about the matter, he would not be entitled to relief because we find no indication of overall incompetence. *Jones v. State*, 784 S.W.2d 789, 793 (Mo. banc), *cert. denied*, 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 175 (1990). Competent performance overall—not errorless performance—was required of Dean's attorney. We find no merit to Dean's point.

We have reviewed the entire record. We fail to find any merit to Dean's contentions of

error. We, therefore, affirm the judgments of conviction and denial of his Rule 29.15 motion for postconviction relief.

All concur.