**STATE of Missouri, Respondent,**

v.

**John D. SEXTON, Appellant.**

**No. WD 51733.**

Missouri Court of Appeals,
Western District.

Aug. 13, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 1996.

---

910 ■

Gerald M. Handley, Kansas City, for Appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for Respondent.

Before HANNA, P.J., and SMART and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

John D. Sexton appeals from his convictions for five counts of sodomy, § 566.060.3,[1] following a jury trial in the Circuit Court of Jackson County. He was sentenced as a "prior offender," § 566.060.3, and received five concurrent forty-year sentences. Appellant asserts five points on appeal: 1) the trial court erred in sentencing appellant to five forty-year concurrent sentences because such sentences exceeded the sentences previously imposed following his first trial; 2) the trial court erred in permitting the victim's rebuttal testimony because she was in the courtroom in violation of the witness exclusionary rule; 3) the trial court erred in excluding evidence and cross-examination of the victim concerning her knowledge of sexual matters gained from pornographic magazines; 4) the trial court erred in overruling appellant's motion for judgment of acquittal because there was insufficient evidence; and, 5) the trial court erred in overruling appellant's request for change of judge following re-

mand. Judgment affirmed in part and reversed in part.

## FACTS

John D. Sexton was charged with one count of rape and five counts of sodomy by Amended Information filed in the Circuit Court of Jackson County. On January 26, 1994, appellant was convicted on all counts following a jury trial and was sentenced to five concurrent twenty-year sentences for sodomy to be served consecutively to a twenty-year sentence for rape. Appellant appealed and this court reversed and remanded the cause on February 1, 1995. *State v. Sexton,* 890 S.W.2d 389 (Mo.App.1995). On retrial, appellant was acquitted of rape but convicted by jury of five counts of sodomy, § 566.060.3, and was sentenced to concurrent 40-year terms of imprisonment as a "prior offender," § 558.016.2.

At the time of trial the victim, R.C., was eighteen years old. When she was approximately nine years old, her mother, Kathleen Sexton, married appellant. Appellant and his young son, Jessie, began living with R.C. and her mother in Lee's Summit, Missouri.

Within five or six months, appellant began subjecting his stepdaughter to a variety of physical and sexual abuse. He ordered her to kiss him on the lips and when she refused, he punched her with his fist in the mouth. When she still refused, he punched her in the nose and she finally acquiesced and kissed him on the lips.

Shortly after the abuse began, appellant removed all of her clothes, put her in a big yellow shirt, took her downstairs to the kitchen and turned on the garbage disposal. He placed her hand over the disposal and warned her that he would put her down there if she told anyone. He also told her that if she ever tried to leave or if she ever told on him that he would kill her.

When she was ten years old, a few months after he had forced her to kiss him on the lips, appellant placed his penis in her mouth and forced her to suck it. He would usually make her swallow the "white stuff" that came

---

1. All statutory references are to RSMo. Supp. 1990 unless otherwise stated. Such statutes

were in effect at the time the crimes were committed.

out of his penis when he ejaculated. He forced her to perform oral sex between three and four times a week. The incidents normally occurred in the morning when her mother was at work.

R.C. testified that over the period of time she lived with appellant, he placed his penis in her vagina, touched her vagina with his fingers and tongue, touched her breasts with his fingers and his mouth, and her "bottom" with his penis and his hands. She testified that she remembered on one occasion when she was ten or eleven, appellant bent her over the coffee table and pulled her pants down. He then inserted his penis into her rectum causing her bottom to bleed. On numerous other occasions appellant placed his penis in her vagina. These incidents of penile-genital conduct occurred in the bedroom at the family's home and in the family's trailer at Truman Lake.

At some point, appellant and her mother placed R.C. on birth control pills against her will. She was told that it was a precautionary measure to prevent against pregnancy in case somebody raped her because appellant didn't want her to get pregnant.

Appellant also used oral sex as a disciplinary tool and control mechanism. R.C. was given the choice between being whipped on the bare buttocks with a thick belt or performing oral sex whenever she needed to be punished. She normally chose the whippings which left marks and bruises on her arms, chest, legs and knees.

R.C. described an incident where appellant grabbed her by the hair and threw her down the stairs. She testified that he would hit her with his fists and throw various objects at her including tools, pencils, pillows, shoes and other items. Appellant would also force her to do something sexually if she wanted to socialize with her friends.

On November 10, 1992, following an incident of sexual abuse at Truman Lake, R.C. reported the abuse to the Lee's Summit police. She was removed from the home and placed in foster care temporarily before going to reside with her biological father.

## I.

In Point I, appellant contends the trial court erred in sentencing him to five concurrent forty-year sentences because such sentences exceeded the sentences imposed following his first trial in which he received five concurrent twenty-year sentences for sodomy, to be served consecutively to a twenty-year sentence for rape. Appellant argues the increased sentences on his sodomy convictions negate the effect of his successful appeal.

Appellant argues that his sentences violate the prophylactic rule set forth in *North Carolina v. Pearce*, 395 U.S. 711, 726, 89 S.Ct. 2072, 2081, 23 L.Ed.2d 656, 670 (1969), overruled in part on other grounds, *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). *Pearce* states that due process requires a defendant's sentence after retrial to be free from any vindictiveness by the court for successfully attacking his first conviction. *Id.* at 725, 89 S.Ct. at 2080. A defendant's fear of such vindictiveness may unconstitutionally deter his exercise of his right to appeal or collaterally attack his first conviction so he must be freed of apprehension to insure due process of law. *Id.* In order to guarantee the absence of such a motivation, the *Pearce* court held that whenever a judge imposes a more severe sentence upon a defendant after a new trial, he must state the reasons for doing so which must be based on objective information concerning conduct occurring after the time of the original sentence. *Id.* at 726, 89 S.Ct. at 2081. However, there is no violation of *Pearce* where the defendant has been tried and sentenced on multiple counts and is then resentenced and receives a different sentence on each viable count, but receives no greater sentence than the total sentence originally received. *State v. Brooks*, 551 S.W.2d 634, 660 (Mo.App.1977).

> When a defendant is convicted of more than one count of a multicount indictment, the district court is likely to fashion a sentencing package in which sentences on individual counts are interdependent. When, on appeal, one or more counts of a multicount conviction are reversed and one or more counts are affirmed, the result is an "unbundled" sentencing package. [Citation omitted.] Because the sentences

are interdependent, the reversal of convictions underlying some, but not all, of the sentences renders the sentencing package ineffective in carrying out the district court's sentencing intent as to any one of the sentences on the affirmed convictions. *United States v. Shue*, 825 F.2d 1111, 1114 (7th Cir.), cert. denied, 484 U.S. 956, 108 S.Ct. 351, 98 L.Ed.2d 376 (1987). The *Shue* court held that the trial judge has the authority to re-evaluate the sentencing package in light of the changed circumstances and resentence the defendant to effectuate the original sentencing intent without violat[ing] *Pearce* or the Double Jeopardy Clause. *Id.*

■ Here, appellant originally received five concurrent twenty-year sentences for sodomy, to be served consecutively to a twenty-year sentence for rape totaling forty years of imprisonment. On retrial, he was acquitted of rape, but convicted of five counts of sodomy and sentenced to five concurrent 40–year sentences. Thus, the prophylactic rule announced in Pearce was not violated since the total sentence appellant received on retrial did not exceed the total sentence originally imposed.

■ Appellant argues that although his sentences on retrial total forty years, the same as his original sentences, his sentences on retrial have the effect of being more severe than his original sentences due to the enactment of § 558.019, RSMo.1994. Section 558.019.5 provides that for purposes of construing the "minimum prison term" provisions, "in the case of consecutive sentences imposed at the same time pursuant to a course of conduct constituting a common scheme or plan," the parole board is "authorized to convert consecutive sentences to concurrent sentences, when the board finds, after hearing with notice to the prosecuting or circuit attorney, that the sum of the terms results in an unreasonably excessive total term, taking into consideration all factors related to the crime or crimes committed and the sentences received by others similarly situated." This provision by its own terms applies only to offenses occurring on or after August 28, 1994. Mo.Rev.Stat. § 558.019.7 (1994); *State v. Dean*, 898 S.W.2d 704, 706 (Mo.App.1995). Appellant's offenses were al-

leged to have occurred "between September 1, 1990 through February 12, 1991." Thus, § 558.019.5 does not apply and appellant's argument is without merit. Point denied.

## II.

In Point II, appellant asserts the trial court erred in permitting R.C.'s testimony because she was in the courtroom in violation of the witness exclusionary rule.

■ Respondent argues the witness exclusionary rule was never invoked. The trial judge stated on the record, "Well, the rule was never invoked." He explained, "I heard you guys talking about the rule. Nobody ever asked me to make a ruling." The trial judge's comments are dispositive of this issue. We find the witness exclusionary rule was never invoked.

■ Assuming, *arguendo*, that the rule was invoked, the decision to exclude the testimony of a witness who has violated the rule lies within the sound discretion of the trial court. *Id.* Absent special circumstances, the testimony of the offending witness should not be excluded solely because the rule was violated. *Id.* These "special circumstances" have generally been implicated only in cases where the witness violates the rule with "the consent, connivance or procurement of the party or counsel calling him." *State v. Gibson*, 760 S.W.2d 524, 526–27, (Mo.App.1988).

■ Further, "where the testimony of the offending witness is offered for the limited purpose of impeachment and not as a part of the offering party's case-in-chief, courts are much more receptive to the evidence." *State v. Gilmore*, 797 S.W.2d 802, 807 (Mo.App. 1990). In fact, "when such witnesses testify in rebuttal and not on a matter for the state's case in chief, there is no abuse of discretion by the trial court." *State v. McMillian*, 779 S.W.2d 670, 671 (Mo.App.1989).

■ The State called R.C. as a rebuttal witness after the defense rested. The rebuttal testimony involved collateral matters such as how many times she had seen her aunt, whether she had talked with appellant's mother on a personal basis, the number and nature of her contacts with her mother after

she began living with her father, and whether appellant had ever beaten her with a belt. Her testimony related to nonessential issues that did not directly relate to the appellant's guilt or innocence of the crimes charged or the elements of those offenses. We find no abuse of discretion in the trial court allowing R.C. to testify on rebuttal. Point denied.

### III.

In Point III, appellant contends the trial court erred in excluding evidence and cross-examination of R.C. concerning her knowledge of sexual matters gained from pornographic magazines.

We must first address respondent's assertion that this evidence is barred by the "rape shield statute." Mo.Rev.Stat. § 491.015 (1994). In order for the rape shield statute to be applicable, R.C.'s alleged possession of, and familiarity with, sexually explicit magazines must constitute "sexual conduct" within the meaning of § 491.015. This would be a case of first impression and we decline to determine the applicability of the rape shield statute under the circumstances here since we are able to dispose of the issue presented on other grounds.

The trial court has broad discretion in determining the relevancy of evidence and such ruling will not be disturbed absent a clear showing of abuse. *State v. Jacobs,* 861 S.W.2d 621, 624 (Mo.App.1993). "It is not error to exclude evidence which has no bearing on the matters in issue and which is immaterial and irrelevant." *State v. Reichert,* 854 S.W.2d 584, 595 (Mo.App.1993). Further, the scope and extent of both cross-examination and redirect examination are within the discretion of the trial court. *State v. Isa,* 850 S.W.2d 876, 896 (Mo. banc 1993)(cross-examination); *State v. Bowler,* 892 S.W.2d 717, 720 (Mo.App.1994)(redirect examination). Our review is limited to an abuse of discretion. *Isa,* 850 S.W.2d at 896.

The court may preclude questioning during cross-examination which is outside scope of direct examination and collateral to the main issue of the case. *Id.* The *Isa* court held the results of a child abuse hotline in-

vestigation were collateral to the main issue of whether Isa killed her daughter. *Id.*

Here, appellant attempted to question R.C. on recross-examination as to pornographic material found by her mother in R.C.'s bedroom under the bed. Defense counsel stated on the record that "the evidence will be that upon her departure from the home, pornographic books were found in her room by her parents ... they're trying to portray her as naive and virginal. This evidence is designed to counter that." The court sustained prosecution's objection on relevancy and admissibility. Defense made the following offer of proof:

Q: [R.C.], before you went to the police, you had looked at and seen literature that was sexually explicit, hadn't you?

A: Yes.

Q: And you, as a matter of fact, had literature that was sexually explicit in your bedroom, didn't you?

A: Not willingly.

. . .

Q: Tell us what you had in your bedroom unwillingly that was sexually explicit?

A: It was a magazine that he had found in this duplex that they were cleaning and he told me to keep it.

. . .

Q: What did you do with it?

A: Put it underneath my bed.

Q: Never looked at it?

A: No.

The only attempt to introduce evidence of this nature was precluded by objection during recross-examination of R.C. during the prosecution's case-in-chief. Although R.C.'s mother testified as a defense witness, appellant did not elicit testimony that she found the pornography in R.C.'s room during the presentation of his case.

Whether R.C. had pornographic material underneath her bed was outside the scope of direct, cross and redirect examinations. Further, it is merely a collateral issue to the question of whether appellant sodomized and raped her. We find the trial court did not abuse its discretion in sustaining the prosecution's objection to this testimony.

Assuming *arguendo* the questioning was relevant, appellant was not prejudiced by its preclusion. "[I]f a witness is asked a question for the purpose of discrediting him, the person asking the question is concluded by his answer." *State v. Lynch,* 528 S.W.2d 454, 457 (Mo.App.1975). Had the trial court allowed the questioning, appellant would have been concluded by her answers which clearly refuted his theory. Appellant also had the opportunity to elicit testimony of the existence of the pornographic materials through Mrs. Sexton's testimony which he failed to do. Thus, appellant was not prejudiced by its preclusion. Point denied.

## IV.

In Point IV, appellant asserts the trial court erred in overruling appellant's motion for judgment of acquittal[2] because there was insufficient evidence to persuade a reasonable juror, beyond a reasonable doubt, of the elements of sodomy, in particular Count IV. Appellant also argues the evidence was deficient to prove that the acts alleged in Counts I, II, III, IV, V and VI occurred within the time alleged in the information. We will address these arguments separately.

In reviewing the sufficiency of the evidence, our review is limited to determining whether the evidence was sufficient to persuade any reasonable juror as to each of the elements of the crime beyond a reasonable doubt. *State v. Hargrave,* 915 S.W.2d 387, 389 (Mo.App.1996); *State v. Silvey,* 894 S.W.2d 662, 673 (Mo. banc 1995); *State v. O'Brien,* 857 S.W.2d 212, 215 (Mo. banc 1993). The evidence and all reasonable inferences drawn therefrom are construed in a light most favorable to the jury's verdict with all contrary evidence and inferences disregarded. *Hargrave,* 915 S.W.2d at 389; *Silvey,* 894 S.W.2d at 673. Although we will not weigh the evidence, we must scrutinize the record to assure that the evidence was indeed substantial. *State v. Jennings,* 649 S.W.2d 448, 451 (Mo.App.1983); *State v. Vil-*

la–Perez, 835 S.W.2d 897, 900 (Mo. banc 1992).

## A. ELEMENTS OF SODOMY

Appellant was charged as follows: Count I, Rape; Count II, Sodomy (by placing his penis in R.C.'s anus); Count III, Sodomy (by placing his penis in R.C.'s mouth); Count IV, Sodomy (by placing his penis in R.C.'s hand); Count V, Sodomy (by placing his finger in R.C.'s vagina); and Count VI, Sodomy (by placing his mouth on R.C.'s vagina). The jury acquitted appellant of rape, but convicted him of the remaining five counts of sodomy.

Section 566.060.3 provided that "[a] person commits the crime of sodomy if he has deviate sexual intercourse with another person to whom he is not married who is less than fourteen years old." Deviant sexual intercourse is defined in § 566.010.2 as "any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person."

The reliability, credibility and weight of the witnesses' testimony is an issue for the jury to determine. *State v. Sumowski,* 794 S.W.2d 643, 645 (Mo. banc 1990); *State v. Parrish,* 852 S.W.2d 426, 428 (Mo. App.1993). The jury may accept or reject all, some or none of a witness's testimony, in addition to, resolving any contradictions or conflicts in that witness's testimony. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). The testimony of a single witness will suffice to support a criminal conviction. *State v. Graham,* 906 S.W.2d 771, 778 (Mo.App.1995). The victim's testimony alone will sustain a conviction even if uncorroborated in sex offense cases unless it is so contradictory and in conflict with the physical facts, surrounding circumstances and common experience that its validity is rendered doubtful. *Id.*

The record is replete with evidence in support of Counts II, III, V and VI. R.C. testified that appellant touched her vagina and had performed anal and oral sex on her.

**2.** Appellant filed a Motion for Judgment of Acquittal at the close of the State's evidence, at the close of all the evidence and on June 28, 1995, after trial. Appellant does not indicate from which motion he alleges error. The first two motions are completely identical and include some of the same issues as presented in the June 28 motion.

She also testified that he made her perform oral sex on him three to four times a week for seven years. The evidence was sufficient to persuade a reasonable juror beyond a reasonable doubt of appellant's guilt on Counts II, III, V and VI. Point denied as to Counts II, III, V and VI.

Count IV alleges appellant committed sodomy by placing his penis in R.C.'s hand. During defense counsel's argument in support of his Motion for Judgment of Acquittal at the close of the State's evidence, defense counsel argued that R.C. did not testify to any hand-penile contact. The court acknowledged the lack of such evidence by stating "... I don't remember any evidence about hand-penile contact. Do you?" Later the court further stated "I don't remember any evidence of hand-penile contact. If your notes indicate that you asked such a question and it's in the transcript, why—." In response, the prosecution stated:

> Judge, in reviewing my notes on R.C.'s testimony, I don't see in there where I specifically asked her about her hand touching the defendant's penis. I think all counts should still go to the jury. I think a reasonable inference can be made when there was all this contact, especially oral sex she would have touched his penis. I believe the statement that was admitted into evidence that, her statement to Chris Salva, although it does not directly touch this issue, has a description there of his penis being hard and so forth. I believe the State is entitled to reasonable inferences. I believe that due to the totality of all the evidence, that that count should be permitted to go to the jury.
>
> ...
>
> THE COURT: One of my instructions in this case is going to be, no statement—well—it is your duty to determine the facts and to determine them only from the evidence and the reasonable inferences to be drawn from the evidence. So I'll overrule the motion as to Count IV....

■ Upon review of the record, we find the prosecution presented no direct evidence that appellant placed his penis in R.C.'s hand committing sodomy. The prosecution argues that we can reasonably infer that hand-penile contact occurred due to the many occurrences of oral sex. We decline to outline the various ways that oral sex may be performed without such contact and hold that is not a reasonable inference. Thus, we find there was insufficient evidence to submit Count IV, sodomy, to the jury, therefore, appellant's conviction on Count IV must be reversed.

### B. TIME FRAME

■ Appellant argues the evidence was deficient to prove that the acts of sodomy occurred within the time alleged in the information. However, "[t]ime is not of the essence in sex offense cases." *State v. Mills,* 872 S.W.2d 875, 878 (Mo.App.1994). Thus, the state is not confined in its evidence to the precise date stated in the information, but may prove the offense to have been committed any day prior to the date of the information and within the period of limitation. *State v. Gardner,* 849 S.W.2d 602, 605 (Mo. App.1993); *Mills,* 872 S.W.2d at 878. The statute of limitations for the crime of sodomy is "ten years after commission of the offense[s]." Mo.Rev.Stat. § 556.037 (Supp. 1990).

■ Here, the earliest act of sodomy took place in 1987 or early 1988 when R.C. was ten years old and first forced to perform oral sex on appellant. The amended information and the instructions provided the time period involved as between September 1, 1990, through February 12, 1991. R.C. testified that the various acts of sodomy occurred continually over a number of years beginning in 1987 when she was 10 years old and continued until she reported them to the police in 1992. The jury could have reasonably concluded, beyond a reasonable doubt, that each of the charged offenses occurred within the time frame provided by the information or prior to the date of the information which is consistent with *Gardner* and *Mills.* Point denied.

### V.

In Point V, appellant contends the trial court erred in overruling appellant's request for change of judge following remand. Appellant argues his request was timely and he

was entitled to a change of judge as a matter of right under Rule 32.07. However, appellant's entire argument references Rule 32.07 before it was amended.[3] The amendment became effective on January 1, 1995. Here, the Mandate of the Missouri Court of Appeals reversing and remanding the judgment in *State of Missouri v. John D. Sexton*, 890 S.W.2d 389 (Mo.App.1995) was forwarded to the Circuit Court of Jackson County on February 1, 1995, which is clearly after the amendment took effect. Therefore, we will review appellant's argument under the amended Rule 32.07.

■ Rule 32.07 as amended provides:
(b) In felony and misdemeanor cases the application must be filed *not later than ten days after the initial plea is entered.* If the designation of the trial judge occurs more than ten days after the *initial* plea is entered, the application *shall be filed within ten days of the designation of the trial judge* or prior to commencement of any proceeding on the record, whichever is earlier. (emphasis added).

Here, there is no dispute that appellant failed to file his request for change of judge within ten days after the initial plea was entered as required by Rule 32.07. Although the date appellant entered his initial plea is not in the record, it would have had to have been before January 26, 1994, the date of the guilty verdicts in his first trial. Appellant filed his Request for Change of Judge on February 21, 1995, which is clearly past the ten day period from the latest possible date appellant could have entered his initial plea.

Further, a remand to the Circuit Court does not constitute the filing of a new charge requiring appellant to be arraigned and an "initial" plea to be entered to a new charge. Thus, a new ten day time frame under Rule 32.07 did not begin when the cause was remanded for retrial. Appellant concedes he did not request a change of judge before his first trial, therefore, the time frame provided

for in Rule 32.07 had run before the commencement of the first trial thereby rendering this application untimely. *See Anderson v. Anderson,* 861 S.W.2d 796, 800 (Mo.App. 1993). Further, the same trial judge was to preside over the second trial ruling out the provision allowing ten days after the designation of the trial judge. *See State ex rel. Burns v. Goeke,* 884 S.W.2d 60, 62 (Mo.App. 1994). Appellant's application is not timely and was properly denied. Point denied.

## CONCLUSION

Appellant's convictions as to Counts II, III, V and VI are affirmed. His conviction on Count IV for sodomy, § 566.060.3, is reversed.

---

3. Before the January 1, 1995 amendment, Missouri Supreme Court Rule 32.07 provided: (c) In felony cases the application must be filed not later than thirty days after arraignment if the trial judge is designated at arraignment. If the trial judge is not designated at arraignment, the application must be filed no later than thirty days after the designation of the trial judge and notification to the parties or their attorneys. If the designation of the trial judge occurs less than thirty days before trial, the application must be filed prior to commencement of any proceeding on the record.