# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2764

_____

John Sexton,                                      *
                                                  *
    Petitioner - Appellant,                      *
                                                  *    Appeal from the United States
v.                                                *    District Court for the
                                                  *    Western District of Missouri.
Mike Kemna,                                       *
                                                  *
    Respondent - Appellee.                       *

_____

Submitted:  September 12, 2001

Filed:  January 29, 2002 (Corrected 2/6/02)

_____

Before LOKEN, RICHARD S. ARNOLD, and FAGG, Circuit Judges.

_____

LOKEN, Circuit Judge.

Missouri inmate John Sexton appeals the denial of his petition for a writ of habeas corpus. Sexton argues that the state courts violated North Carolina v. Pearce, 395 U.S. 711 (1969), by imposing the same forty-year sentence for fewer counts of conviction after Sexton successfully appealed his initial conviction. He further argues the evidence was constitutionally insufficient to convict him of sodomy, he was denied his constitutional right to confront the victim at trial, and he was denied effective assistance of counsel. We affirm.

# I. Background.

In January 1994, a jury convicted Sexton of one count of rape and five counts of sodomy. The victim was Sexton's minor stepdaughter, R.C. The trial court sentenced him to five concurrent twenty-year sentences on the sodomy counts and a consecutive twenty-year sentence on the rape count, for a total prison term of forty years. On appeal, the Missouri Court of Appeals overturned the convictions and remanded for a new trial. State v. Sexton, 890 S.W.2d 389, 392 (Mo. App. 1995).

At the second trial, Sexton was again charged with one count of rape and five counts of sodomy.[1] R.C. testified that Sexton's abuse began shortly after her mother married him, when R.C. was nine years old. The abuse usually occurred when R.C.'s mother was at work. R.C. testified that Sexton demanded oral sex three to four times a week from the time she was approximately ten years old until she reported the abuse in November of 1992. In addition to coercing oral sex, R.C. testified that Sexton touched her vagina, breasts, and buttocks with his fingers and tongue, placed his penis in her vagina on numerous occasions, and at least once inserted his penis into her rectum. Early in the abuse period, Sexton threatened to kill R.C. if she ever told anyone about his conduct or tried to leave his home. Later, Sexton and his wife forced R.C. to take birth control pills, justifying the measure as a means of preventing pregnancy if R.C. were ever raped. Sexton also used sexual abuse to control and punish R.C., demanding sexual contact if R.C. wished to associate with friends, and forcing her to choose between a whipping and oral sex if she misbehaved.

---

[1]Each sodomy count alleged a different type of "deviate sexual intercourse" as defined in the governing statute, Mo. Rev. Stat. § 566.010.2 (Supp. 1990) ("any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person"). Missouri law at the time defined sodomy as "deviate sexual intercourse with another person to whom he is not married who is less than fourteen years old." Mo. Rev. Stat. § 566.060.3 (Supp. 1990).

The second jury found Sexton not guilty of the rape charge, but convicted him of the five sodomy charges. The trial court sentenced him to five concurrent forty-year terms for the sodomy offenses. Thus, his total sentence was again a forty-year prison term. On direct appeal, the Missouri Court of Appeals overturned one sodomy conviction because the victim did not testify to any instance of that type of deviate sexual intercourse. The court upheld the other four sodomy convictions, rejected Sexton's argument under North Carolina v. Pearce, and affirmed his forty-year sentence. State v. Sexton, 929 S.W.2d 909, 918 (Mo. App. 1996). After the Missouri courts denied his motion for state post-conviction relief as untimely, Sexton filed this petition for a federal writ of habeas corpus. The district court[2] denied relief but granted him a certificate of appealability on five issues. Sexton's counsel filed briefs addressing three of those issues. Sexton filed pro se briefs addressing the other two.

## II. Discussion.

The Anti-terrorism and Effective Death Penalty Act of 1996 amended the federal habeas corpus statute to provide that relief may not be granted to a person in state custody unless the underlying state proceeding:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court recently clarified the proper interpretation of § 2254(d)(1). Writing for a majority of the Court on this issue, Justice O'Connor

---

[2]The HONORABLE ORTRIE D. SMITH, United States District Judge for the Western District of Missouri.

explained that the "contrary to" clause limits habeas relief to cases in which "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or . . . decides a case differently than this Court has on a set of materially indistinguishable facts." The "unreasonable application" clause permits the writ to issue only "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. 362, 402-13 (2000).

## A. The North Carolina v. Pearce Issue.

In North Carolina v. Pearce, the Supreme Court considered whether the U.S. Constitution limits the discretion of state courts in sentencing criminal defendants who successfully appeal their initial convictions but are convicted again after a new trial. The Court emphasized that there is no constitutional bar to imposing a more severe sentence after the second conviction. 395 U.S. at 723. However, "Due Process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." Id. at 725. To guard against the danger of vindictiveness, the Court held that, "whenever a judge imposes a more severe sentence upon a defendant after a new trial," the record must demonstrate that the greater severity was based upon "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." Id. at 726.

Sexton argues that the forty-year sentence imposed after his second trial violates this principle. Though he received a total sentence of forty-years after each trial, Sexton explains that his second sentence was more severe, and therefore Pearce's presumption of vindictiveness applies, because (i) the second jury found him not guilty of the rape charge that accounted for one-half of his initial forty-year sentence, and (ii) the trial court "doubled" his first twenty-year sentence on the sodomy charges so as to impose the second forty-year sentence. The Missouri Court

-4-

of Appeals rejected this contention, concluding that the presumption of vindictiveness does not apply because Sexton received the same forty-year sentence after both convictions. Relying on a Seventh Circuit decision, United States v. Shue, 825 F.2d 1111, 1114 (7th Cir.), cert. denied, 484 U.S. 956 (1987), the Missouri court reasoned that, when a multi-count conviction is reversed on appeal, and defendant is convicted or resentenced on one or more of those counts on remand, "the trial judge has the authority to re-evaluate the sentencing package in light of the changed circumstances and resentence the defendant to effectuate the original sentencing intent without violating Pearce." 929 S.W.2d at 914; accord United States v. Pimienta-Redondo, 874 F.2d 9 (1st Cir. 1989) (en banc).

This court recently confirmed, in a case involving a one-count conviction, that the Pearce presumption of vindictiveness does not apply when the same sentence is imposed following a successful appeal. United States v. Arrington, 255 F.3d 637, 639 (8th Cir. 2001). The issue, then, in this multi-count case, is whether the "same sentence" inquiry should be made on a count-by-count basis, or simply by comparing the total prison sentence imposed before and after the successful appeal. A number of our sister circuits have considered this issue in the context of federal prosecutions, where we have supervisory as well as constitutional jurisdiction. Most concluded, as the Missouri Court of Appeals did in this case, that the total sentences should be compared. Two circuits instead compared the total sentence after remand with the total sentence imposed on those same counts before the appeal. See United States v. Vontsteen, 950 F.2d 1086, 1092-93 (5th Cir. 1992) (en banc) (collecting cases). Our research uncovered three pre-AEDPA circuit decisions in which state inmates sought federal habeas relief under Pearce from their multi-count state court sentences. Relief was denied in all three because the second sentence was not more severe, but the cases were not factually similar to this case. See Washington v. Regan, 510 F.2d 1126 (3d Cir. 1975); Timmons v. Richards, 940 F.2d 666, 1991 WL 153443 (7th Cir. 1991) (unpublished); Thomas v. Sutton, 857 F.2d 1469, 1988 WL 92922 (4th Cir. 1988) (unpublished). See also Kelly v. Neubert, 898 F.2d 15, 18 (3d Cir. 1990)

(Pearce presumption "should not be mechanically applied when some of a defendant's individual sentences are increased, but his aggregate sentence is reduced on remand following a successful appeal").[3]

Though these prior circuit court decisions do not provide a definitive answer to our issue, they tend to confirm that the Missouri Court of Appeals decision was not an unreasonable application of Pearce within the meaning of 28 U.S.C. § 2254(d)(1). In addition, later Supreme Court decisions have not broadly extended the Pearce presumption of vindictiveness. See Alabama v. Smith, 490 U.S. 794, 801-03 (1989) (no presumption when sentence following trial is more severe than previous sentence following guilty plea; Pearce overruled on this issue); Chaffin v. Stynchcombe, 412 U.S. 17, 24-29 (1973) (no presumption when more severe sentence imposed by a different jury; Pearce is concerned only with judicial vindictiveness, not whether the defendant's right to appeal may be "chilled"). These later Supreme Court decisions, and the circuit court decisions declining to presume vindictiveness when a sentencing judge reimposes the same total sentence in a multi-count case, are strong support for the district court's conclusion that the Missouri courts did not unreasonably apply Pearce in this case. See Williams, 529 U.S. at 410 ("an *unreasonable* application of federal law is different from an *incorrect* application of federal law").

We find further support for this conclusion in Missouri law regarding sentencing and the facts of this case. The applicable statute provided that the sentencing court "shall decide the extent or duration of sentence or other disposition to be imposed under all the circumstances, having regard to the nature and circumstances of the offense and the history and character of the defendant . . . ." Mo.

---

[3]But see Midgett v. McClelland, 547 F.2d 1194 (4th Cir. 1977), cited by the dissent at p.14 ante. In at least two subsequent decisions, the Fourth Circuit has adopted the total sentence or "aggregate package" rule without discussing the divided panel opinion in Midgett. See United States v. Gray, 852 F.2d 136, 138 (4th Cir. 1988); United States v. Raimondo, 721 F.2d 476, 478 (4th Cir. 1983).

Rev. Stat. § 557.036.1 (Supp. 1992). In this case, the sentencing court had discretion to impose "any term of years above the minimum, including life imprisonment," because the sodomy statute prescribed a minimum sentence but not a maximum term of years. State v. Bolds, 11 S.W.3d 633, 637 (Mo. App. 1999) (citation omitted). See Mo. Rev. Stat. § 566.060.2 (Supp. 1990). To determine the appropriate sentence, the sentencing court was required to "take into account the nature and circumstances of the offense together with character and propensities of the offender, as well as his past as it may indicate present purposes and tendencies and suggest the period of restraint and kind of discipline that should be imposed." State v. Cline, 452 S.W.2d 190, 195 (Mo. 1970). In reviewing a sentence imposed under this regime, the Missouri appellate courts "presume that the trial court's experience and expertise enable the judge to consider appropriate sentencing factors and to disregard improper matters." State v. Lindsey, 996 S.W.2d 577, 579 (Mo. App. 1999).

In this case, a new presentence report was prepared following Sexton's second conviction. At the sentencing hearing, the prosecutor submitted evidence that Sexton had sexually assaulted other young girls in the past, including a conviction for sexually assaulting his prior wife's daughters. The prosecutor urged the trial court to impose the same total punishment, arguing that Sexton was guilty of the same course of prolonged criminal conduct even though the jury had found him not guilty of one specific charge.[4] After defense counsel argued that a forty-year sentence would be "punitive" given Sexton's acquittal of the rape charge, the trial court sentenced him to concurrent forty-year sentences for each sodomy count of

---

[4]The prosecutor urged the court to impose concurrent forty-year sentences for the sodomy counts, rather than two consecutive twenty-year sentences, because a new Missouri statute gave state parole authorities power to convert consecutive sentences into concurrent sentences to alleviate prison overcrowding. This aspect of state law refutes any inference that the sodomy sentences were "doubled" out of vindictiveness.

conviction. On this record, the Missouri Court of Appeals did not unreasonably apply <u>Pearce</u> in concluding that the forty-year sentence is not presumptively vindictive.[5]

## B.  Was the Evidence Constitutionally Sufficient?

Sexton argues the evidence presented at his second trial was constitutionally insufficient to convict him of the four sodomy charges.  To prevail on this due process claim, he must demonstrate that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 324 (1979).  In applying this standard, "[t]he scope of our review for a collateral challenge to the sufficiency of the state's evidence is extremely limited. . . .  We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that resolution." <u>Miller v. Leapley</u>, 34 F.3d 582, 585 (8th Cir. 1994).

Sexton argues the prosecution failed to prove that he engaged in acts of sodomy between September 1, 1990 and February 12, 1991, the dates charged in the information.  The Missouri Court of Appeals rejected this contention:

> R.C. testified that the various acts of sodomy occurred continually over a number of years beginning in 1987 when she was 10 years old and continued until she reported them to the police in 1992.  The jury could have reasonably concluded, beyond a reasonable doubt, that each of the charged offenses occurred within the time frame provided by the information or prior to the date of the information . . . .

---

[5]Sexton also argues that his sentence was based upon "sentencing factors" not proved beyond a reasonable doubt, contrary to <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 477 (2000).  However, <u>Apprendi</u> claims may not be raised on collateral review. <u>United States v. Moss</u>, 252 F.3d 993, 997 (8th Cir. 2001).

929 S.W.2d at 917. In denying federal habeas relief on this issue, the district court noted that "a fair reading of R.C.'s testimony reveals a reign of sexual impropriety that occurred on a regular basis" and concluded that the trial record fully supports the Missouri Court of Appeals's assessment of the evidence. We agree.

## C. The Confrontation Clause Issue.

The Sixth Amendment's Confrontation Clause, made applicable to the States through the Fourteenth Amendment, includes "the right of effective cross-examination." Davis v. Alaska, 415 U.S. 308, 318 (1974). Sexton argues this right was violated when the trial court precluded defense counsel from questioning R.C. on recross-examination about sexually explicit magazines her mother found in R.C.'s bedroom. Sexton argues he was prejudiced by the trial court's ruling because cross-examination on this issue would have countered the State's theory that R.C. learned about sexual terms and acts during the course of Sexton's abuse.

The Missouri Court of Appeals rejected this contention for two reasons. First, the Court concluded that the trial court did not abuse its discretion because the issue was beyond the scope of R.C.'s direct, cross, and redirect examination and was collateral to the question whether Sexton had sodomized and raped R.C. Second, the Court concluded that Sexton could not show prejudice because, under Missouri evidentiary principles, the questioner seeking to discredit a witness in this fashion is "concluded by her answers," and R.C. would have testified that Sexton gave her the sexually explicit magazine and forced her to keep it. In addition, the Court noted that Sexton could have placed this evidence before the jury through testimony by R.C.'s mother but failed to do so. 929 S.W.2d at 915-16.

As a general matter, the Confrontation Clause is rarely implicated when a state court limits the scope of cross-examination on an issue that is collateral to the defendant's guilt or innocence. See Howard v. Sigler, 454 F.2d 115, 121 (8th Cir.

-9-

1972). But even assuming that this ruling violated the Confrontation Clause, we agree with the district court the violation was harmless error. See Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986) (Confrontation Clause violations are subject to harmless error analysis). As the Missouri Court of Appeals noted, Sexton was not prejudiced by the trial court's ruling because R.C.'s answer to the excluded question would have been unfavorable to Sexton, and the defense could have introduced evidence of the sexually explicit magazine in R.C.'s bedroom through her mother. Moreover, the jury credited R.C.'s testimony that Sexton sodomized her, despite defense efforts to attack her credibility with inconsistent prior statements and the suggestion that she fabricated the alleged abuse to "get back" at her mother and stepfather. In these circumstances, excluding this proffered recross-examination was clearly harmless.

### D. Ineffective Assistance of Counsel Issues.

In his pro se briefs, Sexton raises ineffective assistance of counsel issues that require additional procedural background. Following the second conviction, Sexton's trial counsel was appointed to the state court bench. Sexton retained a second attorney to represent him at sentencing. After sentencing Sexton, the trial court initially forgot to advise him of his state post-conviction remedies. This portion of the proceedings took place in chambers a few minutes later, with defense counsel participating by telephone. At the conclusion of the sentencing proceedings, Sexton advised the court that he was satisfied with both attorneys' representation. The court then found no probable cause to believe there had been ineffective assistance of counsel, which cleared the way for Sexton's second counsel to represent him on direct appeal. See generally Missouri Supreme Court Rule 29.07(b)(4); Shigemura v. Groose, 45 F.3d 250, 252-53 & n.3 (8th Cir.), cert. denied, 516 U.S. 855 (1995). One year later, Sexton filed a motion for state post-conviction relief under Missouri Supreme Court Rule 29.15, asserting ineffective assistance of counsel claims. The state courts denied that motion as untimely.

Sexton's federal habeas petition alleged that his first attorney provided ineffective assistance at trial and his second attorney provided ineffective assistance at sentencing and on direct appeal. The district court denied on the merits the ineffective assistance claims relating to the direct appeal; the court denied a certificate of appealability on those issues, and they are not before us. The district court denied as procedurally barred the claims of ineffective assistance by the first attorney at trial, and by the second attorney at sentencing. See State v. Wheat, 775 S.W.2d 155, 157-58 (Mo. 1989) (en banc) (ineffective assistance claims not raised in a timely Rule 29.15 motion are forfeited). The court rejected Sexton's contention that cause excused this procedural default but granted a certificate of appealability on those issues.

On appeal, Sexton again argues that cause excuses his untimely motion for state post-conviction relief. In the district court, he argued there was cause because he was not able to speak privately with his attorney when the trial court explained his post-conviction rights, and because the trial court's explanation of Rule 29.15's various filing deadlines confused him into believing he had ninety days rather than thirty days to file a Rule 29.15 motion. The district court rejected these contentions, noting (i) that Sexton did not express a desire to speak privately with counsel and could have done so after the sentencing proceedings; (ii) that the trial court explained that Sexton could file a Rule 29.15 motion himself and would be provided the proper form on request; and (iii) that the trial court's explanation of the Rule 29.15 deadlines could not have caused his procedural default because he did not file a Rule 29.15 motion for one year. Sexton barely alludes to these contentions on appeal. Having carefully reviewed the record, we agree with the district court. See Fuller v. Bowersox, 202 F.3d 1053, 1059 (8th Cir.) (trial attorney's failure to advise of applicable state post-conviction deadlines is not cause excusing procedural default), cert. denied, 531 U.S. 995 (2000); Weeks v. Bowersox, 106 F.3d 248, 250 (8th Cir.) (judge's failure to delineate every feature of state post-conviction relief is not cause), upheld on en banc review, 119 F.3d 1342, 1350 n.8 (8th Cir. 1997), cert. denied, 522

-11-

U.S. 1093 (1998); Hart v. Purkett, 95 F.3d 638, 639 (8th Cir. 1996) (judge's minor mistake in explaining Rule 29.15 is not cause).

Sexton makes a different cause argument on appeal, that his second attorney said he would file a timely Rule 29.15 motion, Sexton relied on that representation, and counsel broke his promise because of a conflict of interest -- counsel's unwillingness to argue his own ineffectiveness. Sexton first raised this argument in a motion for reconsideration to the district court. The court denied the motion because this was a new attack on the second attorney, because "[t]hese claims of ineffectiveness are so meritless as to fail to qualify as a basis for a conflict of interest," and because there is no constitutional right to effective assistance of counsel in state post-conviction proceedings. The record fully supports this ruling. Therefore, Sexton has failed to demonstrate cause excusing his procedural default in state court, and the district court properly denied his claims of ineffective assistance of counsel at trial and at sentencing.

The judgment of the district court is affirmed.

RICHARD S. ARNOLD, Circuit Judge, dissenting.

The Court concludes that Mr. Sexton did not receive a more severe sentence at his retrial, and, therefore, that North Carolina v. Pearce, 395 U.S. 711 (1968), does not apply. I respectfully disagree. Mr. Sexton was convicted of fewer crimes at his second trial. Yet, his sentence was the same as that following his first trial. Quite simply, this is a more severe sentence. To hold otherwise, as the state court did, and as this Court does, is an unreasonable application of Pearce. Mr. Sexton's sentence violates due process, and he should be granted relief.

The Supreme Court ruled in Pearce "that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he

receives after a new trial." 395 U.S. at 725. To enforce this due process guarantee, Pearce limits the circumstances in which a sentencing judge may impose a more severe sentence upon a defendant after a new trial. An increased sentence is permissible only when the judge affirmatively states on the record reasons for the more severe sentence that are "based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." Id. at 726.

It is uncontested that Mr. Sexton's case does not fall within this exception for later conduct. Nevertheless, the Court holds that Pearce does not afford Mr. Sexton any relief. It concludes that because Mr. Sexton's total sentence was the same following both his first and second convictions that he has not been subjected to a more severe sentence. In his original trial, Mr. Sexton was convicted of one count of rape and five counts of sodomy. He was sentenced to five concurrent twenty-year sentences on the sodomy counts and a consecutive twenty-year sentence on the rape count. In his second trial, Mr. Sexton was convicted of five counts of sodomy, but acquitted of rape. Before the judge was a defendant convicted of fewer crimes. Yet, Mr. Sexton received the same total sentence of forty years, handed down as concurrent forty-year terms for each sodomy count. The same person received the same punishment for lesser crimes. This is plainly a "more severe sentence." Pearce forbids exactly such a result.

Our sister circuits are split on the application of Pearce to multi-count cases. I believe the better approach is that used by the Second and Eleventh Circuits. Rather than comparing the aggregate sentences, these courts compare the first and second sentences only after subtracting from the first sentence any punishment imposed for dropped, dismissed, or acquitted counts. See United States v. Markus, 603 F.2d 409 (2d Cir. 1979) (shortening sentence of federal prisoner to correct more severe sentence in violation of Pearce that resulted after a count was dropped on retrial). In a case factually similar to Mr. Sexton's, the Eleventh Circuit has held that Pearce is

-13-

violated when a defendant receives an identical sentence after retrial, even though convicted of fewer counts.  See United States v. Monaco, 702 F.2d 860 (11th Cir. 1983).  In that case, a defendant received a total of four years of imprisonment on three counts.  He was granted a new trial, at which his motion to have count three dropped for insufficiency of the evidence was granted.  He was convicted on the other two counts and sentenced to four years of imprisonment.  Although his total first and second sentences were identical, he received a longer sentence on the convicted counts than he had at his first trial.  The Eleventh Circuit adopted the approach in Markus and held that his new sentence violated the rule in Pearce.  702 F.2d at 885.  See also Midgett v. McClelland, 547 F.2d 1194 (4th Cir. 1977) (granting pre-AEDPA habeas relief to state prisoner who received same sentence at retrial, despite having been acquitted of one charge for which he originally received twenty-year term, as this was impermissible and appeared retaliatory on its face).

Today, the Court instead adopts the "aggregate sentence" approach of simply comparing the first and second sentences.  The problems with this approach are manifold.  First, it allows a judge to order the same sentence regardless of any reduction in the defendant's convictions, provided that the statutory maximums for the convicted crimes are not exceeded.  This results in defendants being given no "credit" for having been convicted of fewer offenses.  They receive the same sentence despite fewer convictions.  However, under the general sentencing provisions of Missouri, courts are allowed to decide the extent or duration of sentence only "upon a finding of guilt upon verdict or plea."  Mo. Rev. Stat. § 557.036.1 (Cum. Supp. 1992).  This suggests that in Missouri sentences should relate to offenses, the nature of which determines the punishment.  In his second trial, Mr. Sexton was convicted of one less offense.  A jury acquitted him of rape.  Neither the state nor this Court points to any authority that would allow a Missouri court to consider acquitted conduct in sentencing a defendant.  Yet, despite his acquittal on the rape charge that garnered him a twenty-year sentence in the first trial, the court entered the same aggregate sentence against Mr. Sexton following his second trial.  It achieved this

-14-

result by increasing the terms on the sodomy counts to produce the same total term of imprisonment. This appears to be retaliatory on its face.

The mere fact that a sentence of forty years is within the statutory limits allowed by Missouri law, as the Court points out, is irrelevant to a Pearce analysis. Upon retrial, Mr. Sexton received a longer sentence for the sodomy convictions, and his total sentence was the same. This is precisely the type of result that chills appeals by criminal defendants, who may believe that the increased sentence after retrial results from judicial vindictiveness. The prophylactic rule in Pearce forbidding more severe sentences was designed to remove this doubt. Upholding the same sentence for a defendant who was convicted of fewer crimes does nothing to eliminate this fear. Instead, it informs defendants that whether they are convicted or acquitted of a crime (for which they were originally sentenced to prison time) may now after retrial be irrelevant to their new sentence. Such a result defies the logic of the sentencing statutes of Missouri, in which defendants are given a sentence for each crime of which they are convicted. See generally Mo. Rev. Stat. § 557 (Cum. Supp. 1992).

Second, while the Court may be correct that the Supreme Court has not broadly extended Pearce, it is equally true, and much more pertinent here, that Pearce is still the law. Its core holding is intact. In both Alabama v. Smith, 490 U.S. 794 (1989), and Chaffin v. Stynchcombe, 412 U.S. 17 (1973), the Supreme Court articulated reasons why in those situations an increased sentence was unlikely to be the result of judicial vindictiveness. In Mr. Sexton's case, this Court produces no such reasons. Therefore, these cases are inapplicable and do not persuasively support the Court's pinched reading of Pearce in the context of a multi-count case.

Indeed, defendants convicted of multiple counts may be more likely to face retaliation upon retrial than defendants convicted twice of a single count. In Mr. Sexton's case, the same judge witnessed a jury convict him of rape and later

witnessed a different jury acquit him. A result such as this may seem to a judge to be an unfair "bonus" result of securing a new trial. Or, as in a single count case, a judge may be angry at a defendant for having taken an appeal that forced him to retry the case. These reasons are retaliatory and forbidden by due process.

Of course, a judge could have a benign reason for wishing to alter the sentences for each count in a multi-count context. In the case relied on by the Court, <u>United States v. Shue</u>, 825 F.2d 1111, 1114 (7th Cir.), <u>cert. denied</u>, 282 U.S. 856 (1987), the Seventh Circuit suggests that because the sentences were likely to have been made "interdependent," a court may wish to recraft the sentence to effectuate its original intent. While this may be true, it does nothing to give assurance against judicial vindictiveness.

Finally, I question the Court's mention of the facts that a new presentence report was prepared for the second sentencing, and that at that hearing, the prosecutor alleged that Mr. Sexton had sexually assaulted other girls in the past. I believe consideration of this information is inappropriate in the context of a <u>Pearce</u> analysis. This alleged behavior did not occur *after* the time of the original sentencing proceeding. Therefore, under <u>Pearce</u> it cannot be used to support a more severe sentence. Its possible relevance appears to be that it may constitute a non-retaliatory reason for the sentence Mr. Sexton received. While this may be, in fact, why the judge increased the sentences for sodomy (rather than out of retaliation), the judge did not say so, and it is exactly this type of speculation that <u>Pearce</u> is designed to eliminate. Our Constitution requires that defendants be freed from any apprehension that the result of a successful appeal may be a vindictive judge. 395 U.S. at 725. Our Court, Mr. Sexton, and other defendants weighing whether to appeal, cannot know why Mr. Sexton received longer sentences for his sodomy crimes. But since there is

a reasonable possibility that retaliation for a successful appeal motivated the second sentence, I believe that Mr. Sexton's case falls squarely under <u>Pearce,</u> and that his sentence is unconstitutional.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.